## AUSTIN STREET RY. CO. v. OLDHAM.

No. 8498.

Court of Civil Appeals of Texas. Austin. Aug. 4, 1937.

Rehearing Denied Oct. 4, 1937.

White, Taylor, & Gardner, of Austin, for appellant.

Walter Greig and Cofer & Cofer, all of Austin, for appellee.

McCLENDON, Chief Justice.

A street car of appellant, moving west on Twelfth street, in Austin, "jumped the track" and collided with an automobile moving east on that street. As a result of the collision, Bessie Oldham, a negro seamstress and a passenger on the street car, was thrown from the seat, her kneecap was broken, and she sustained other injuries. This appeal is from a judgment upon a special issue verdict in her favor for $1,000, itemized: Hospital and ambulance bill, $78.05; doctor's bill, $100; personal injuries, $821.95.

Of the eleven assignments of error, seven concern objections to the charge and two (10 and 11) question the sufficiency of the evidence to support the judgment. The portions of the charge objected to are: Issue No. 1 (assignments 3, 4, and 5); issue No. 4 (assignments 1 and 2); issue No. 11 (assignment 8); issue No. 12 (assignment 9); the definition of "negligence" (assignments 6 and 7).

The special issue verdict found:

(1) The motorman was operating the street car "at too fast a speed for the safety of passengers."

(2) This was negligence, and

(3) A proximate cause of plaintiff's injuries.

(4) The motorman was not operating the street car "in a careful and prudent manner."

(5) This was negligence, and

(6) A proximate cause of the injuries.

(7) The injuries were not due to an unavoidable accident.

(8) The automobile with which the street car collided was not "suddenly turned in front of the street car * * * and caused said street car to become derailed."

(10) $78.05 would reasonably compensate plaintiff for hospital and ambulance bills.

(11) $100 "would reasonably compensate the plaintiff * * * for her doctor's bill incurred by her."

(12) $821.95 "would reasonably compensate plaintiff * * * for personal injuries received by her."

There were four objections to special issue No. 1: (a) "There is no pleading to warrant the submission of said issue as submitted"; (b) "there is no proof * * * warranting the submission of said issue as drawn"; (c) "it does not submit an issue of fact but submits the general issue"; (d) it "is on the weight of the evidence."

Objections (c) and (d) are manifestly without merit.

The pertinent allegations of the petition read: "Defendant's authorized servant and agent was grossly negligent and careless in the management and operation of the car in which plaintiff was riding, in that immediately before the accident occurred (in utter disregard to the safety and comfort agreed by defendant to afford passengers) he was driving the car at an excessive speed and in a manner unusual to the speed at which cars are ordinarily driven, thus causing the car to sway dangerously, and said car, while traveling at such an excessive rate of speed and swaying from one side to another, jumped the track and crashed into an automobile, causing a collision, the impact of which was so forceful and terrific that it threw plaintiff violently from the seat wherein she was sitting into the aisle of said electric car; and as a direct result of the negligence and carelessness in the management of said car by defendant's authorized servant and agent plaintiff was seriously injured."

To our mind "excessive" (the pleading) and "too fast" (the special issue) as applied to speed are synonymous. If the two expressions have any substantial difference in meaning, it is too subtle for us to grasp. Webster's International Dictionary defines "excessive" as: "Greater than what is usual or proper; overmuch. * * * Excessive is the general term for what goes beyond just measure or amount."

While some of the witnesses testified that the car was traveling at the usual rate of speed, there were several whose testimony amply supported the finding that the speed was excessive or too fast and caused the derailment. One witness testified that the car "was running faster than I had ever seen a street car run." Another, that the car was "going kind of fast. It was kind of bouncing. * * * Bumping." Another, "what made me notice it, when the street car was crossing Twelfth and Comal, a man tried to catch the street car, and it was going so fast it went on off and left the man. When it came up there the street car was bouncing like this (indicating), and all at once it bounced off the the track and hit up against this car, and it was off the track as far as from here to the corner of that table (about 5 or 6 feet) * * * The fact is that the street car came tearing down there and jumped off the track and onto this automobile." Another described the car's motion as "coming loping." Appellee testified the car was behind schedule; and the above evidence was sufficient to warrant a finding that the car was traveling at an "excessive speed"—a speed "too fast" for the safety of the passengers—which caused it to sway or bounce and "jump the track." In fact, the record presents no other reasonable hypothesis, if the testimony of these eyewitnesses (several of whom were apparently disinterested) be accepted. The track was straight and level, or slightly down grade, and nothing occurred to cause the derailment except the speed and resultant motion of the car. It was appellant's theory that the derailment was caused by a sudden veering of the automobile, resulting in the collision. This theory was supported by the motorman's testimony. Every other eyewitness testified that the automobile was sufficient distance from the track to clear the car; and that the collision was caused by the car's jumping the track. The jury evidently believed these witnesses and not the motorman. (See eighth special issue, above.)

The objection to special issue No. 4 was "because it does not submit any issue of fact but submits the general issue." Whether this issue was proper under the pleadings is immaterial, as the error, if any, was harmless. On the issue

of negligence, the judgment is fully supported by the answers to issues 1, 2, and 3; and the finding under the fourth may be disregarded as surplusage.

The sixth and seventh assignments complain of overruling appellant's objection to the charge, reading: "Defendant objects and excepts to the definition of 'negligence' as included in paragraphs 4 and 5, on page 1 of the court's charge, and says the same is not a correct and proper definition of the term 'negligence' as applied to this cause; and, further, because the said Charge defining the term 'negligence' as drawn and prepared, is upon the weight of the evidence."

Paragraphs 4 and 5 of the charge read:

"4. By the term 'negligence' as used in this Charge, is meant the failure to exercise ordinary care.

"5. By the term 'ordinary care' as used in Charge, is meant such care as a person of ordinary prudence would use under the same or similar circumstances. A Street Railway Company engaged in the business of a common carrier of persons for hire, is not an insurer but is held to a high degree of care for the safety of its passengers using its lines."

It is to be observed that the objection was leveled only at the definition of "negligence." Assuming, however, that "ordinary care" was intended to be included as a part of the definition of "negligence," we can see no fault in the definition. No respect in which the definition was claimed to be erroneous was pointed out other than that it was upon the weight of the evidence, which clearly it is not.

Besides, such objection is too general. The same is true of the objection that the definition is not a correct and proper one "as applied to this case." This subject is fully treated in 3 Tex.Jur. § 141, pp. 212–214.

Appellant cites in this connection Gulf, C. & S. F. Ry. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183, and Wichita Valley Ry. v. Williams, 116 Tex. 253, 288 S.W. 425. In the Conley Case the charge was affirmatively erroneous, which is not the case here. In the Williams Case the objection was specific.

Upon proper request or objection appellant would have been entitled to, and no doubt the court would have given, a definition of "high degree of care." No such request or objection was made, nor can such be reasonably inferred from an objection that the definition of "negligence" was not correct.

The objection to special issue No. 11 was "because the issue leaves out of consideration the necessity or the reasonableness of the doctor's bills, if any." This special issue called for the sum which would "reasonably compensate the plaintiff * * * for her doctor's bills incurred by her, if you find she incurred such bills." We hold the objection not well taken under the evidence. There is no question but that appellee suffered a fractured kneecap. She was taken to the city hospital and a negro doctor by the name of Roberts was called. The appellant's claim agent went to the hospital and had Dr. Howard Granberry called. He performed an operation upon the kneecap, and put it in a plaster cast. Roberts assisted in this operation. He also treated her while she was in the hospital (about a week) and afterwards in her home. She was confined to her bed for six or eight weeks, and after that for some time had to use a crutch. Roberts testified that his services were reasonably worth $175. Dr. Granberry, a witness for appellant, testified they were reasonably worth at a "top figure," $100. The jury took Dr. Granberry's only estimate. We think the special issue fairly embraced the proper measure of damages under this item.

In connection with the twelfth special issue, the jury were authorized to consider, among other items (not questioned): "The present cash value, if any, of such physical and mental pain and suffering * * * if any, as you may believe she will in reasonable probability suffer in the future." This was objected to "because there is no evidence that the plaintiff will undergo any pain or suffering in the future and because such question is speculative." The evidence we think is sufficient to support a finding of some future pain. The trial was had in January, 1936; the injury occurred in August, 1934. Roberts testified that the "injury resulted in weakening that limb. * * * It could prove a permanent disability, and it could give her some defects in walking. * * * There would be some impairment" (in its use). He was not specifically interrogated regarding future pain. Appellee testified that the knee was still stiff and "still pained" her; that

she could not use the limb in operating her machine. Appellee's husband testified that she "can't use that leg any length of time because it stiffens and hurts." While Dr. Granberry testified to full recovery from the fracture, he conceded, "Of course, I think any person who has broken a bone on a cold day he might have a little twinge or muscle stiffness." There was clearly enough evidence to take this issue to the jury. No complaint is made of the amount of the verdict. Considering the nature of the injury, the pain, and loss already suffered, the amount awarded under this item may be regarded as moderate, independently of any permanent effect so far as concerns pain. The jury, in all probability, made no allowance for future pain, taking Dr. Granberry's estimate on this as well as on the value of Robert's services.

The tenth and eleventh assignments which question the sufficiency of the evidence as a matter of law to support the judgment, and complain of the refusal to direct a verdict for appellant, are overruled. This subject has already been disposed of under the first and second assignments, above.

The trial court's judgment is affirmed.

Affirmed.