## TEXAS EMPLOYERS INS. ASS'N v. HITT.

### No. 10866.

Court of Civil Appeals of Texas.
Galveston.

Feb. 2, 1939.

Rehearing Denied Feb. 23, 1939.

Royston & Rayzor, of Houston, for plaintiff in error.

Allen, Helm & Jacobs, of Houston, and Thornton & Markwell, of Galveston, for defendant in error.

GRAVES, Justice.

This appeal by the insurance-carrier for the employer of the claimant in a compensation case, advanced for consideration under this Court's Rule XI, section (c), is from a judgment of the 10th District Court, awarding the claimant $6,668.05 in a lump sum, in response to a jury's verdict on special issues finding, in brief, that such claimant had sustained an accidental injury while in the course of such employment on January 11 of 1937, that his disability resulting therefrom was total and permanent, that he had not been merely partially disabled but permanently so, that at the date of such injury he did not have kidney-stones or kidney disease, that his average weekly wage at that time had been $32, and that the payment of compensation in weekly installments would result in manifest hardship to him.

By apparent inadvertence on its able counsel's part, the plaintiff in error's brief violates this Court's Rule XII as to length.

The stated lump-sum award was entered by the court upon a calculation of 401 weeks of compensation at the rate of $19.21 per week from and after the date of the injury as so found and fixed, that is, January 11 of 1937.

In this court, through a great number of assignments and propositions, the carrier assails the judgment so rendered, its major contentions of law following its principal defense upon the facts in the trial court, to the effect that the defendant in error had not shown himself to have been injured or disabled as claimed, but instead had been suffering only as a result of kidney-stones, or a kidney disease—being:

(1) That the court erred in refusing its motion to require the plaintiff to sub-

mit to a physical examination by its doctor during the trial;

(2) The receipt of the testimony of the witnesses Ray Ashe and of the plaintiff himself, over objection, as to what had been their average wages in the tank-building trade, in which plaintiff had been engaged at the time of his claimed accident, was prejudicial;

(3) The court's action in permitting plaintiff's counsel to cross-examine his own witness, Lester Sharpe, under the guise of a qualifying examination, and in permitting such counsel to make inflammatory remarks referring to an intimidation of such witness, was reversible error;

(4) The court erred in denying its counsel the privilege of a re-direct examination of the witness Dr. Spiller about his having made examinations at other times for clients of Mr. Helm, one of plaintiff's attorneys;

(5) The admission of testimony of plaintiff concerning his poverty and indebtedness, to the effect that he owed about $2000 for doctor's bills and expenses, was inflammatory, immaterial, and prejudicial.

(6) Its motion for an instructed verdict in its favor should have been granted, there having been no evidence of incapacity from an accidental injury as alleged;

(7) The court's charge was erroneous and the special issues improperly submitted, in that they wholly failed to indicate to the jury upon whom the burden of proof rested as to any special issue given, and in defining the phrase "preponderance of the evidence" by referring to it as "a", rather than "the", preponderance of the evidence;

(8) The instruction to the jury that they should not consider the plaintiff's financial need in determining whether or not he had been so disabled, was erroneous as constituting a general charge, as well as tacitly advising them they could consider his financial need in determining the issues concerning a lump-sum payment and his average weekly wage;

(9) The respective definitions of the phrases, "total incapacity", "permanent incapacity", and "producing cause", were erroneous, upon the weight of the evidence, in conflict with other definitions, and each imposed greater burdens upon it than the law permitted;

(10) The submission of each and all of the 14 special issues given to the jury was erroneous and prejudicial, in that neither singly nor collectively did they properly embody the fact-issues raised between the parties by the pleadings and evidence;

(11) The court erred in entering judgment without requiring findings upon special issues 8 to 11, both inclusive, as well as in the submission of such issues, it being undisputed that the plaintiff was then at least partially incapacitated from a disease not compensable, to-wit, pneumonia;

(12) The court erred in refusing to submit its requested special issues A, B, C, D, E, and F, embodying its affirmative defenses, to the effect that the plaintiff's incapacity had been caused in whole or in part by a disease of the kidneys unrelated to a compensable injury.

None of these contentions, it is determined, should be sustained; as presaged by preceding recitations, the theories of the opposing parties were these: The claimant presented that he was a strong, healthy man, unafflicted at the time by any disabling disease, was a competent tank-builder, earning from $6 to $18 per day at that trade, when, in the course of his employment on January 11 of 1937, he was seriously injured while helping to lift a steel structure in place on a tank (one of the ground men having let it go, thereby throwing its weight on him, seriously and permanently injuring his back); that as a result of such accident, he had been totally and permanently disabled within the meaning of the compensation law, hence had become entitled to the 401 weeks' benefits prescribed by the compensation act.

The insurance-carrier, on the other hand, denied the declared-upon cause of action in toto, in turn charging that he had not been injured as claimed, but that his condition was the result of a pre-existing disease in the nature of kidney-stones, or kidney disease, and that at the time of the trial he was also suffering disability in whole or in part as a result of the further disease of pneumonia.

The opposing issues of fact thus raised by the pleadings were likewise supported by evidence of each side sufficient to carry them to the jury, whereupon the learned trial court embodied the controversy thus joined in these inquiries to the jury, after defining "a preponderance of the evi-

dence", "total incapacity", "partial incapacity", "permanent incapacity", "injury", "accidental injury", and "producing cause":

"No. 1. Do you find from a preponderance of the evidence that John (Jack) H. Hitt sustained an accidental injury on or about January 11, 1937? Answer 'We do' or 'We do not'.

"No. 2. Do you find from a preponderance of the evidence that since January 11, 1937, John (Jack) H. Hitt has been incapacitated to work and earn money? Answer 'He has been' or 'He has not been'.

"No. 3. Do you find from a preponderance of the evidence that the accidental injury, if any, received by John (Jack) H. Hitt on January 11, 1937, was a producing cause of his incapacity to work and earn money, if any? Answer 'It was' or 'It was not'.

"No. 4. Do you find from a preponderance of the evidence that such incapacity to work and earn money, if any, is total as that term has hereinbefore been defined for you? Answer 'It is total' or 'It is not total'.

"No. 5. Do you find from a preponderance of the evidence that such total incapacity, if any, is permanent, as that term has hereinbefore been defined to you? Answer 'We do' or 'We do not'.

"No. 6. Do you find from a preponderance of the evidence that the payment of compensation to John (Jack) H. Hitt in weekly installments would result in manifest hardship and injustice to him? Answer 'We do' or 'We do not.'

"If you have answered Special Issue No. 4 'We do', and only in that event, then answer:

"No. 7. How long do you find from a preponderance of the evidence will such total incapacity, if any you have found, continue from January 11, 1937? Answer by stating the number of weeks, if any.

"No. 8. Do you find from a preponderance of the evidence that such incapacity to work and earn money, if any, is partial as that term has been herein defined for you? Answer 'It is partial' or 'It is not partial'.

"If you have answered the preceding Special Issue No. 8, 'We do' and only in that event, then answer:

"No. 9. Do you find from a preponderance of the evidence that such partial incapacity, if any, will be permanent? Answer 'We do' or 'We do not'.

"If you have answered Special Issue No. 8 'We do', and only in that event, then answer?

"No. 10. How long do you find from a preponderance of the evidence will such partial incapacity, if any, continue from the termination of the total disability, if you have found any total disability, but if you have found no total disability, then from January 11, 1938? Answer by stating the number of weeks, if any.

"If you have answered Special Issue No. 8 'We do', and only in that event, then answer:

"No. 11. What do you find from a preponderance of the evidence to be the weekly wage earning capacity of plaintiff, John (Jack) H. Hitt, during such period of partial incapacity, if any? Answer stating the amount.

"No. 12. Do you find from a preponderance of the evidence that on or about January 11, 1937, John (Jack) H. Hitt had kidney stones or kidney disease? Answer 'He did' or 'He did not'.

"If you have answered the preceding special issue No. 12 'He did', and not otherwise, then answer the following special issue:

"No. 13. Do you find from a preponderance of the evidence that such kidney stones or kidney disease, if any, was the sole producing cause of his disability to work and earn money, if any? Answer 'It was the sole producing cause' or 'It was not the sole producing cause'.

"No. 14. What do you find from a preponderance of the evidence is a just and fair amount to both parties to be computed as the average weekly wage of John (Jack) H. Hitt? Answer by stating the amount per week."

The jury answered as follows:

"No. 1................. We do.
"No. 2................. He has been.
"No. 3................. It was.
"No. 4................. It is total.
"No. 5................. We do.
"No. 6................. We do.
"No. 7................. Permanent.
"No. 8................. It is not partial.
"No. 9................. (Unanswered)
"No. 10................. (Unanswered)
"No. 11................. (Unanswered)
"No. 12................. He did not.
"No. 13................. (Unanswered)
"No. 14................. 32 dollars."

328

■ In the opinion of this court that arbitrament settled the dispute and justified the decree entered.

(1) The court denied defendant's request to force the plaintiff to so submit during the trial to a physical examination for these reasons:

"(1) The plaintiff had already been examined on numerous occasions and the findings of such examinations, together with the X-ray plates, were in the possession of the defendant.

"(2) The defendant had had an adequate opportunity of requesting such examination prior to the trial, to-wit: on March 16, 1938, when the plaintiff's deposition was taken by the defendant.

"(3) The granting of such request would have delayed the trial, it being shown that two or three days would be required."

■ In such circumstances, the matter was well within the sound discretion of the court, and no abuse is made to appear. United States Fidelity & Guaranty Co. v. Nettles, Tex.Com.App., 35 S.W.2d 1045, at page 1046; Employers' Liability Assur. Corp. v. Williams, Tex.Civ.App., 293 S.W. 210.

■ (2) There was no error in permitting the testimony complained of on this feature, since the testimony as a whole clearly shows that Section 1, first subdivision 3 of R.S. Article 8309 was applicable to this claimant's wages, hence he did not improperly speculate upon them in the testimony relied upon by the carrier in this connection; it undisputedly appeared that neither this claimant nor any other employee had worked substantially the whole of the year immediately preceding January 11 of 1937, in the same or similar employment, in that or a neighboring place; this claimant was paid by the job, working between 200 and 300 days a year, not knowing of any other employee in the tank-building business in Texas who had worked as much as 300 days between January 11 of 1936 and 1937, respectively; his minimum wage having been $6 and his maximum $18 per day; his witness Ashe gave like and similar testimony, adding that he had worked with this claimant and that the latter was an expert tank-builder; others of his witnessess, Cliff Calloway and J. B. Graham, testified similarly, and no exception was taken to the evidence given by either of them.

In such circumstances, it is thought these authorities fully support the trial court's action in this connection: Art. 8309, Subdivision 3 of Sec. 1, Texas R.C.S.; 45 Tex.Jur. 652, 661; United States Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465; Traders & General Ins. Co. v. O'-Quinn, Tex.Civ.App., 111 S.W.2d 859; Maryland Casualty Co. v. Drummond, Tex. Civ.App., 114 S.W.2d 356; Fidelity & Casualty Co. v. McLaughlin, Tex.Civ.App., 106 S.W.2d 815; Texas Employers' Ins. Ass'n, v. Hamilton, Tex.Civ.App., 95 S.W.2d 767; Texas Employers' Ins. Ass'n v. Beckworth, Tex.Civ.App., 42 S.W.2d 827; Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780; Texas Indemnity Ins. Co. v. Wilson, Tex.Civ.App., 281 S.W. 289; Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488.

■ (3) The carrier did not object to the examination of Lester Sharpe until it was about ended, nor did it move to strike the evidence received. The complaints now made against it were therefore waived. 41 Tex.Jur. 905; Texas & N. O. R. Co. v. Walker, 58 Tex.Civ.App. 615, 125 S.W. 99, error refused; Texas Law of Evidence, page 19; Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 43 S.W.2d 473; 41 Tex.Jur. 906, 916, 920, 925, 926, 930.

■ Moreover, no error is thought to inhere in the court's action anyway. On cross-examination of plaintiff's witness Sharpe, defendant's attorneys catechized him upon a statement he had given one of its claim-adjusters, not, however, offering the statement itself in evidence until objection to it had been made by opposing counsel; on the whole incident, the court merely permitted plaintiff's attorney to develop whether or not the statement had been executed before the witness could be asked as to its contents. No abuse of a sound judicial discretion in such a situation is made to appear. 44 Tex.Jur. 1079; Fort Worth & D. C. R. Co. v. Garlington, 41 Tex.Civ.App. 340, 92 S.W. 270; Texas Law of Evidence, pp. 343–347.

■ (4) The carrier's earnest insistence that it was denied an absolute right to still another re-direct examination of its witness Dr. Spiller is not well taken, under the facts presented; the Doctor had first testified at length about making X-ray examinations of plaintiff and giving his diagnosis of the plates; on cross-examination by plaintiff's counsel as to whom he had

acted for and who paid for the X-ray pictures, he volunteered to say he had testified in another matter for one of plaintiff's attorneys, as well as for this insurance-carrier whenever it had needed him, and for a number of other named insurance companies; thereupon, he was given a re-direct examination by this carrier's counsel, but not interrogated as to any examinations he had made or any testimony he had given for this plaintiff's attorneys; then, following the testimony of eight others of its witnesses, the Doctor was again called and questioned about the type of X-ray he had made for the plaintiff—no reference during any of these examinations having been made by plaintiff's counsel as to who any of the witness' other other clients had been, or as to what type of clients he had testified for at any time; it was then, upon a second re-direct examination, after all the other stated proceedings had intervened, that the question was asked whether the witness ever made any examination for the attorneys representing the plaintiff, which the court refused, in the circumstances, to permit to be answered; since the inquiry did not have to do with anything brought out on cross-examination, and related to matters that should have been elicited on the first re-direct examination, its refusal was within the sound discretion of the trial court. Texas Law of Evidence, p. 371; Jones on Evidence, Civil Cases, 3rd Ed., par. 873; Presidio County v. Clarke, 38 Tex.Civ.App. 320, 85 S.W. 475; 44 Tex.Jur., sec. 177; Cunningham v. Austin & N. W. Ry. Co., 88 Tex. 534, 31 S.W. 629.

(5) The complained-of admission of plaintiff's testimony as to his poverty and indebtedness was so clearly proper, as tending to show him entitled to the lump-sum settlement he sought and obtained, that detailed discussion of it is not deemed essential; but these authorities are cited as upholding the ruling: Lawler, Texas Workmen's Compensation Law, p. 328; 45 Tex.Jur. 682; Texas Employers' Ins. Ass'n v. Beckworth, Tex.Civ.App., 42 S. W.2d 827, error dismissed; St. Paul Mercury Indemnity Co. v. Mullins, Tex.Civ. App., 73 S.W.2d 932; Texas R.C.S., Art. 8306, section 15.

(6) Likewise, the contention that there was no evidence of incapacity from an accidental injury presented in the claimant's behalf, wherefore an instructed verdict against him should have been given at the conclusion of his case in chief, is inept, to say the least of it; without undertaking either to detail the evidence, or even to make a resume thereof, the finding is made that it amply supported the jury's verdict upon each and all of the issues embodying these matters of fact; not only did the claimant himself testify fully as to his employment, its reaches, his wages and how they were arrived at, the happening of the accident under which he claimed, and his experience, but further as to his condition both before the injury and subsequent thereto up to the time of the trial; and he was corroborated by the testimony of his fellow-workers, and as to his physical condition by Dr. Stucki; thus the evidence fully supported, if indeed it did not require, the finding of total and permanent disability as made by the jury, under such authorities as these: Texas Employers' Ins. Ass'n v. Scott, Tex.Civ.App., 46 S.W.2d 348, writ of error refused; Maryland Casualty Co. v. Bryant, Tex.Civ.App., 84 S.W. 2d 492, writ of error dismissed.

(7) The introductory phrase, "Do you find from a preponderance of the evidence", to most of the submitted special issues, is not subject to the criticism so leveled against it, but, on the contrary, is a definition that appears not only to be correct, but also to have been quite generally accepted as such, where any definition of this seemingly plain term is given. Tinsley v. Metzler, Tex.Civ.App., 44 S.W. 2d 820, writ of error dismissed; Kleber v. Pacific Ave. Garage, Tex.Civ.App., 70 S. W.2d 812, writ of error dismissed.

Furthermore, the carrier did not in this instance submit to the court any definitions it considered to be correct.

(8) While, as already indicated, testimony as to a claimant's financial condition in a compensation case, where the issue of a lump-sum settlement is also raised, is admissible, it seems clear that the court should not permit testimony as to financial distress to influence the jury in passing upon the question of whether or not—vel non—an actual disability exists, and the extent of it; for this reason the court did not err in instructing the jury not to consider this plaintiff's financial need in determining whether or not he had suffered the disability claimed; whether or not that instruction was necessary, it was clearly not harmful.

(9) The challenged definitions under this complaint were these:

(a) "The term 'total incapacity', as used in this charge, does not imply an absolute disability to perform any kind of labor, but such disability as disqualifies a person performing the usual tasks of a workman in such a way as to prevent him from procuring and retaining employment in the usual occupation which he is suited to perform."

(b) "By the term 'partial incapacity' is meant that a person is disqualified from performing the usual tasks of a workman but is capable of performing part of such usual tasks, or labor of a less remunerative class whereby a reduction in earning capacity is suffered."

(c) "By the term 'permanent incapacity' is meant that a person is permanently disabled, either totally or partially, and will probably never again be able to do the usual tasks of a workman thereafter, and will not in all reasonable probability be able to do the full tasks of a workman as he did before the alleged injury."

(d) "By the term 'injury', as used in this cause, is meant damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom."

(e) "By the term 'accidental injury', as used in this cause, is meant an undesigned, unforeseen or unexpected occurrence or mishap causing damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom."

(f) "By 'producing cause', as that term is used in this charge, is meant such injury as would naturally result in the disability, if any, suffered by John (Jack) H. Hitt."

In the first place, there were no specific objections made to the charge in these several respects before it was presented to the jury, hence no opportunity was afforded the trial Judge to consider or remove the claimed defects. 3 Tex.Jur. 212, sec. 141; Baker Co. v. Turpin, Tex. Civ.App., 53 S.W.2d 154, error dismissed; Karotkin Furniture Co. v. Decker, Tex. Civ.App., 32 S.W.2d 703, affirmed Tex. Com.App., 50 S.W.2d 795; Colvard v. Goodwin, Tex.Civ.App., 24 S.W.2d 786, error dismissed; Greaber v. Coca Cola Bottling Works, Tex.Civ.App., 98 S.W.2d 1028, error dismissed; Austin St. Ry. Co. v. Oldham, Tex.Civ.App., 109 S.W.2d 235, error dismissed.

In the next place, the quoted definitions appear to this court to be correct and to have been generally so accepted in this state. 45 Tex.Jur. 585; Lawler, Texas Workmen's Compensation Law, 225, Sec. 106.

(10) What has been said determines adversely the extended presentment to the effect that the court erred in submitting each and all of the special issues to the jury for various and sundry reasons; upon the contrary, it is this court's view that these inquiries properly submitted the ultimate issues of fact raised in the cause under the pleadings and evidence; as indicated supra, the main defenses upon the facts were, (1) that no such accident, nor injury, nor disability, as claimed, had occurred, and (2) that whatever disability the claimant was afflicted with was wholly due either to pre-existing kidney-stones, or kidney disease, or to an ensuing spell of pneumonia. These matters were all threshed out before the jury and found on sufficient evidence adversely to the carrier. Especially did special issues Nos. 12 to 13 properly submit and the answers thereto properly dispose of its contention as to the pre-existing kidney disease. As suggested supra, our authorities seem in effect to hold that, in order for an employee to recover compensation in a case like this, all that need be shown is that the injury was a producing cause: 45 Tex.Jur. section 82; Texas Indemnity Co. v. McNew, Tex.Civ.App., 90 S.W.2d 1115, error dismissed; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, error dismissed; Texas Employers' Ins. Ass'n v. Burnett, Tex.Civ. App., 77 S.W.2d 742; Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, error refused; Texas Indemnity Ins. Co. v. Dean, Tex.Civ.App., 77 S.W.2d 748; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72.

While there are further matters discussed in the brief, they have in effect been disposed of by the conclusions stated, hence further discussion will be foreborne.

The trial court's judgment will be affirmed.

Affirmed.