**SOUTHERN UNDERWRITERS v. SCHOOLCRAFT et al.**

**No. 3911.**

Court of Civil Appeals of Texas. El Paso.

March 21, 1940.

Rehearing Denied April 11, 1940.

Simpson, Dorenfield & Fullingim, of Amarillo, and Benbow, Saunders & Holliday, of Dallas (E. A. Simpson, of Amarillo, of counsel), for plaintiff in error.

Joseph E. Childers, of Abilene, and McBroom & Clayton, of El Paso, for defendants in error.

WALTHALL, Justice.

This is a compensation case under the Workmen's Compensation Law of this State.

The Southern Underwriters, plaintiff in error, the insurance carrier, brought this suit as plaintiff against J. A. Schoolcraft, as defendant, to set aside the award to Schoolcraft of the Industrial Accident Board.

On March 17, 1937, J. A. Schoolcraft was an employee of Southern Fuel & Transfer Company in El Paso County, Texas, a subscriber to the Employers' Liability Act, as that term is used in our compensation statutes, which Company held a compensation insurance policy covering the employees of J. C. Hudson, doing business as the Southern Fuel & Transfer Company, issued by plaintiff in error Southern Underwriters. On December 17, 1937, J. A. Schoolcraft, while in the course of said employment, and arising out of and originating in the work of his employer, sustained accidental injuries to the physical structure of his body. Schoolcraft was employed as a steel worker, and at the time of his injuries he was engaged in the line of structural steek work for his employer, and while in the act of tak-

ing a steel truss from the building where he was at work he accidentally slipped and fell from a height of some sixteen to twenty feet, landing on a cement platform and beams, striking with his back and side against said platform and beams, a lengthy steel rod fell across him, and in his fall Schoolcraft sustained injuries. The injuries described in Schoolcraft's cross action are: a broken pelvis on the right side; a broken right forearm and wrist; a dislocated right kidney; torn ligaments and bruises to his right hip; a fracture of the neck of the right femur or thigh-bone; injury to his right sacroiliac and lumbrosacral region, that is, his lower back and groins, with resulting arthritis.

Schoolcraft alleged and tendered evidence as to the effect of his injuries, such as his confinement in hospitals, treatment by physicians, and his confinement in a cast; a slight shortening of the right leg due to the fracture of his hip; stiffening of his right wrist; loss of his ability to perform any kind or degree of manual labor.

He alleged that his injuries suffered in said accident are of a permanent nature and have produced and will continue to produce total and permanent disability.

He pleads in the alternative that he has been totally incapacitated since the time of said accident and will be so incapacitated for two years in the future, and will thereafter be permanently partially incapacitated from performing manual labor or pursuing his line of work, and that his earning capacity will be permanently impaired and diminished to the extent of the per cent stated.

Schoolcraft had not worked in the employment in which he was working at the time he was injured, neither for his named employer nor for any other employer, for the whole of the year immediately preceding his said injuries. At the time of his said injuries he was earning wages at the rate of $150 per month, his weekly wages being $34.62; other employees at neighboring places had been earning in excess of $150 per month, their weekly wages paid them being $34.62 or more during the whole of the year next preceding December 17, 1937.

Schoolcraft, under the facts stated, pleaded in the alternative the application of subdivisions one, two and three, section 1, of Article 8309 of the Revised Civil Statutes. Schoolcraft also asked that the

compensation be paid him in a lump sum, and that he had assigned to his attorneys, naming them, one-third of all compensation recovered in full payment of their services. He prayed for judgment on his cross action, with interest as pleaded, less the compensation already paid him as stated.

Defendant in the cross action, the Southern Underwriters, answered by general denial, special denials, general demurrer and special exceptions.

The case was tried with a jury and submitted upon special issues.

At the conclusion of the trial the Southern Underwriters filed its motion for an instructed verdict which the court overruled. The court rendered judgment on the verdict of the jury, except as to the jury's answer to question No. 21 only, based upon weekly compensation, on which issue judgment was rendered on Schoolcraft's motion for judgment non obstante veredicto, thereby fixing the weekly compensation at $17.31 instead of $20 found by the jury. The court overruled the Southern Underwriters' motion for a new trial, and the case is before us for review on writ of error.

## Opinion.

█ The trial court in the charge defined "partial incapacity" as follows: "That the term 'partial incapacity' as used herein has the following meaning: It shall mean where an employee by reason of injury sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but, nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depression or reduction in his earning capacity."

Southern Underwriters excepted to the above definition, and in the brief states its several exceptions, which we omit, but do state the substance of its contention.

Plaintiff in error's contention is, as we view it, that the definition of partial incapacity as given, by the expression, "whereby he suffers a depression or reduction in his earning capacity," makes Schoolcraft's incapacity to turn upon the question of whether he suffered a loss of earning capacity or a loss of wages, while the underlying purpose of the Workmen's Compensation Law is to compensate an injured workman for either a total or partial loss

of capacity to work and labor, and not for a loss of earning capacity or loss of wages.

Plaintiff in error refers to Republic Underwriters v. Brown, Tex.Civ.App., 117 S.W.2d 157, 158, in which case the definition of partial incapacity embraced the expression that the injury to the employee "so incapacitat[ed] him that he is not able to perform the tasks of his regular employment, but is able to secure and retain employment reasonably suited to his incapacity and physical condition at wages less than what was paid him before his injury."

Also, in United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344, a somewhat similar definition of partial incapacity was given, and in each case the Court of Civil Appeals held the definition imposed upon the insurance carrier a greater burden than the law required or the insurance contract calls for, and reversed the case.

We will not, in the interest of brevity, review the cases. The Courts of Civil Appeals, it appears, have not been altogether harmonious as to a proper definition of partial incapacity.

In the instant case the trial court's definition of partial incapacity. is the same as that found in Traders & General Insurance Co. v. Wright, Tex.Civ.App., 95 S. W.2d 753, decided by a divided court, which case was approved by the Commission of Appeals, and adopted by the Supreme Court in 132 Tex. 172, 123 S.W.2d 314, though the Commission of Appeals did not specifically discuss the definition in the case of partial incapacity. In the Wright case, as in the case at bar, the jury made no finding on the issue of partial incapacity. In Texas Employers' Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323, 330, a definition of partial incapacity is similar to that in the Wright case, in that it embraced the issue of reduction "in earning capacity is suffered." The case was affirmed.

In Texas Employers' Ins. Ass'n v. Clack, Tex.Com.App., 132 S.W.2d 399, 401, the Commission of Appeals said, "One of the underlying purposes of our compensation statutes is to compensate an injured employee, not merely for loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full-time basis. Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356, 360, writ refused; Traders & General Ins. Co. v. O'Quinn, Tex.Civ. App., 111 S.W.2d 859, writ refused," and under the circumstances stated distinguished the case from others stated.

While we think our conclusion necessarily doubtful, by reason of the difference in opinion as above in the courts, we overrule plaintiff in error's assignment.

■ When Schoolcraft was injured he was first taken to Hotel Dieu, an El Paso hospital, and there treated by Dr. Rogers. Schoolcraft thereafter went to Abilene, Texas, and was· there, at the instance of plaintiff in error, treated by Drs. Clark and Cooper, the latter a kidney specialist. Neither of the two named Abilene doctors was in attendance at the trial of this case in El Paso. In his argument to the jury one of the attorneys for defendant in error said: "They are going to say he (Schoolcraft) refused to have a systoscopic examination here. They want to make out to the jury that he was afraid; yes, he was afraid, but not of what it will show, but of spending two weeks in bed and having this case go over. Let them argue that he wouldn't submit to the request of their physician; how many examinations do they want? Dr. Rogers in the hospital made one, took X-rays of him, X-rayed him time and again, and then he went to Abilene and Dr. Cooper examined him and sent him to Dr. Clark. This boy didn't pay him. Who paid him? Its in the testimony."

Plaintiff in error objected to the argument on the ground that "It was a criticism of the Southern Underwriters for failure to produce Dr. Clark as a witness upon the trial of the case, and for the further reason that there was no evidence to support said argument." The court overruled the objection.

There is nothing in the verbiage of the argument that Dr. Clark was not in attendance on the trial. The rest of the argument seems to be in anticipation of a claim that plaintiff in error might make. We think the argument objectionable, but do not think it of that character that should reverse the case. In fact, in plaintiff in error's lengthy argument in its brief and cases referred to, no mention is made of the latter part of the argument and the objection made. The assignment is overruled.

Dr. George Turner qualified as a specialist in laboratory and X-ray diagnoses branch of medicine or surgery. Dr. Turner made an examination of Schoolcraft on

the day before he testified. He made four films, two of the urinary tract and two views of each lower forearm, wrist and hand, and testified as a witness for plaintiff in error. His evidence is extensive, covering some twenty-five pages of the record.

In his opening argument before the jury one of the attorneys for defendant in error said, "But getting back to that kidney position, always in the proper place. And I asked him, 'Do you always, Doctor (Dr. Turner), find the right kidney lower than the left?' 'Yes,' he said, 'the right kidney is lower than the left,' so then I read from a book on anatomy that doctors use, that he says is all right, and that book says that very frequently they are on the same level, the left and the right, but he didn't think that was right, he had never seen any case like that. But Dr. Snow said he had an infected kidney. I don't know what Dr. Cooper thought about that kidney, and neither Dr. Clark or Dr. Cooper were here."

■ The objection made was that the argument was outside the record, and was a criticism upon plaintiff in error for failure to produce Dr. Cooper and Dr. Clark as witnesses, and highly prejudicial. The court overruled the objection.

The quotation read was from the text-book "Cunningham on Anatomy," 5th Ed., page 1257, where the author says: "The precise level of the kidneys in the abdominal cavity is subject to a considerable amount of variation, and, further, it is usual to find a difference in level of the right kidney and left kidney in the same individual. Most frequently the left kidney is on a somewhat higher level than the right, and in many cases the kidneys are found to occupy the same level, or, the more usual condition being reversed, the right kidney is a little higher than the left."

Dr. Turner said, "In rare cases that might be true." In answer to the question: "Then you disagree when you say, 'In many cases the kidneys are found to occupy the same level?'" To which Dr. Turner replied: "I don't recall ever seeing one, although there might be."

We have stated the above in view of the objection that the argument was "outside the record." The argument is not subject to the objections made, and the assignment is overruled.

Elsewhere we have stated that the trial court, on motion non obstante veredicto, set aside the jury's finding of defendant in error's wages of $20 and substituted therefor $17.31, and so entered judgment.

Schoolcraft's pleading on his cross action and the evidence showed that he was not entitled to recover compensation under subsection 1 or 2 of section 1, Article 8309, R.C.S., 1925. The uncontroverted evidence shows that when Schoolcraft and others did steel work in El Paso and the neighborhood they received $40 per week, never less, hence he would be entitled under the statute to the maximum, or $20 weekly wages. For twelve weeks after the accident plaintiff in error voluntarily paid Schoolcraft $17.32 per week. As we view it, that sum marks the lowest measure of plaintiff in error's liability.

■ The trial court took the position, however, that by accepting the above weekly payments such acceptance was evidence that the amount was proper under subdivision 3 of the above article of the statute. Schoolcraft accepted and, in effect, waived his right to a higher wage. He had that right. Fidelity & Casualty Co. of New York v. McLaughlin, Tex.Sup., 135 S.W.2d 955.

We think the case of Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553, applicable here. In that case, as here, subdivisions 1 and 2 of section 1, Article 8309, R.C.S., were not applicable. The trial court rendered judgment for $15.58 as a weekly compensation under the third subdivision of Article 8309. The Court of Civil Appeals, 4 S.W.2d 631, set that aside and entered judgment for $20 per week, the amount allowed by law. The Commission of Appeals affirmed the increased compensation made because at the time the injury was sustained the injured employee was working at such increased weekly wage, and it would be right and proper in such a case to compute the average annual wages to allow compensation on the basis of wages received at the time of the injury. Schoolcraft had worked less than a year, but had at all times worked on the basis of the customary wage, $40 or more per week.

It has been held that the making of partial weekly payments at a given rate of compensation is an acquiescence in the fact of the issuance of a policy by a compensation company, and proof of the stated weekly wage. We refer to some of the cases, without comment. Texas Employers' Ins. Ass'n v. Beckworth, Tex.Civ.App., 42 S.W.2d 827, 831; Georgia Casualty Co. v. Ginn, Tex. Civ.App., 272 S.W. 601; Independence In-

demnity Co. v. Polk, Tex.Civ.App., 14 S.W. 2d 330; Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 465; Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 93 S.W.2d 1180, case dismissed. In Texas Employers' Ins. Ass'n v. Hamor, Tex.Civ.App., 97 S.W.2d 1041, it is held that proof of payment of weekly compensation by the insurance company is sufficient to establish the compensation rate. Fidelity & Casualty Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780, writ dismissed. The assignment is overruled.

The trial court, on the cross action, instructed the jury: "The word 'permanent' (incapacity) as used in this charge means incapacity that will continue and not end, but remain throughout the life of the person so injured."

■■ Plaintiff in error objected to the definition as being more burdensome on defendant than the law authorizes and is on the weight of the evidence, and submitted that the word "permanent" "means something that will continue without improvement, but will remain the same throughout the life of the person injured," and refers to Employers' Casualty Co. v. Scheffler, Tex.Civ.App., 20 S.W.2d 833. In that case the court was considering a charge that submitted whether the injuries resulted in "total permanent incapacity," which required the jury to answer yes or no. The court held that the charge, with the explanation, was duplicitous; that it was not necessary to define either total or permanent incapacity, and that it unduly emphasized the issue, and that it was error, in order to relieve the situation, to refuse to give the charge submitted, the same as the one submitted by plaintiff in error here.

For a disability to be permanent it must continue during the lifetime of the injured party. 45 Tex.Jur. p. 578, par. 154; Texas Employers' Ins. Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323.

We think the charge was not error.

■ In the tenth question the court submitted to the jury, "Do you find that Schoolcraft, as a result of such personal injury, if any, became incapacitated for labor in any degree?" and if the jury answered, "Yes," then answer Question 11: "Do you find from the evidence that such incapacity to labor, if any such there was, was total or partial? Answer by the use of the word 'total' or by the use of the word 'partial.' Answer by the use of the word 'total,' if you so find from a preponderance of the evidence; but unless you so find from a preponderance, answer by the use of the word 'partial.' "

We do not think the issue objectionable as being duplicitous and multifarious.

■ In the next succeeding charge the court submitted to the jury Schoolcraft's incapacity to labor, whether permanent or temporary, and submitted the two issues in the same manner as in issue No. 11, that is, if found permanent, answer "permanent," but unless so found, answer "temporary." We hold as under 11.

When Schoolcraft rested his case on his cross action, plaintiff in error, Southern Underwriters, filed its motion for an instructed verdict on its theory that Schoolcraft had no cause of action for compensation on the policy sued on. The court overruled the motion, to which plaintiff in error assigns error.

■ There are two insurance policies in the case, both effective at the time Schoolcraft was injured, both policies covered workmen engaged in classification of work described as truckmen, driver, chauffeurs and their helpers, stablemen, garagemen, blacksmiths, repairmen, riggers, storage warehouse employees, not otherwise covered. There was a rider attached to the policy sued on which increased the classification of the employees covered by the policy and made the policy cover and include iron or steel erection, iron or steel frame structures not riveted or welded, and not over two stories in height. This rider certificate was made and attached to the policy after Schoolcraft received his injuries. Schoolcraft was a structural steel worker, had done structural steel work or pipe fitting and bridging that goes with structural steel work of any kind, anything that came up.

At the time of his injuries Schoolcraft was an employee of Hudson as defined in Article 8309, and his employer was a subscriber supposedly carrying compensation insurance on all his employees; employer paid premiums based on their wages, including Schoolcraft, although Schoolcraft's duties at the time of the accident were such as to require a higher premium than the classifications specifical-

ly mentioned in the policy. However, it was the policy used by both employer and plaintiff in error insurance carrier to cover compensation insurance for all workmen regardless of their classification.

The insurance policy issued by plaintiff in error to Schoolcraft's employer contained the following provisions: "If this subscriber undertakes any operations not described in the declarations, he shall make proper deposit or deposits thereon at such time as the attorney may elect based on the manual of rates in use by this carrier at the time when such operations commenced and shall report the entire remuneration earned by employees engaged in such operations in the same manner as provided in the declarations for operations already described therein. At the end of the contract period the actual amount of remuneration earned by employees during such period shall be exhibited to the carrier as provided in Condition (c) hereof and earned deposit or deposits adjusted in accordance therewith at the rates and under the conditions herein specified, etc." Condition (c) above referred to gives the carrier the right at all reasonable times to inspect the plants, works, machinery, etc. Then,. "The obligations and promises of the carrier to the employee, or to his dependents as set forth in this paragraph, shall not be affected by the failure of the subscriber to do or to refrain from doing any act required by the contract nor by default of this subscriber after the accident in making deposits or in giving of any notice required by the contract or otherwise."

Mr. Hudson, Schoolcraft's employer, testified that Schoolcraft was employed by him at the time of the accident; that his company had made payments of premiums on the workmen's compensation policy to plaintiff in error at the time of the accident, and that these payments were based on the salaries paid his employees, including Schoolcraft's; that he had been notified that the United Employers' Casualty Company had succeeded, some time following the accident, to all the rights and liabilities of the Southern Underwriters, the plaintiff in error, and that the United Employers' Casualty Company had audited his company's books and charged an increased premium antedating the date of the accident, based on the nature of the various employments disclosed by the audit, and that this premium had been paid.

The assumption agreement is in evidence, sent up in its original form as Exhibit 13.

Under the terms of the policy and the facts of this case we are not prepared to say that the policy does not include and embrace Schoolcraft. Janes Contracting Co. v. Home Life & Accident Co., Tex.Civ.App., 245 S.W. 1004, affirmed by Commission of Appeals 260 S.W. 839; Texas Employers' Ins. Ass'n v. Price, Tex.Civ.App., 300 S.W. 667, error dismissed; Price v. Texas Employers' Ins. Ass'n, Tex.Com.App., 296 S.W. 284; Texas Constitution, Article 1, sections 13 and 19, Vernon's Ann.St.; Texas Employers' Ins. Ass'n v. Kelly, Tex.Civ.App., 56 S. W.2d 1108.

Plaintiff in error paid Schoolcraft's disability compensation for twelve weeks, discussed elsewhere, but see Consolidated Underwriters v. Lee, Tex.Civ.App., 107 S.W.2d 482, and cases cited, holding that when such payment is made an insurance carrier so recognizing an injury will not be permitted to deny its liability under the Workmen's Compensation policy. It is true that plaintiff in error pleaded that such payments were paid under mistake, but we think that such mistake does not relieve plaintiff in error from its liability.

Plaintiff in error presents other assignments which we have not specifically discussed. We have carefully reviewed them, and think they present no reversible error. They are each overruled.

The jury found all issues presented to them in favor of defendant in error, and, we think, upon sufficient evidence.

Finding no reversible error the case is affirmed.

PRICE, C. J., not sitting.