**TEXAS EMPLOYERS' INS. ASS'N v. ROLLINS.**

No. 4942.

Court of Civil Appeals of Texas. El Paso.
April 15, 1953.

Hill D. Hudson, Pecos, for appellant.

Roberson, Finley & Duncan, Kermit, for appellee.

FRASER, Justice.

This is a case arising under the Workmen's Compensation Act of Texas, which was tried before a jury in the 109th Judicial District Court of Ward County, Texas, resulting in a total permanent verdict for the appellant and is on appeal from said court.

Appellant's first point is as follows:

"The court erred in submitting special issue No. 14 inquiring as to whether compensation should be paid in a lump sum, over the objection of appellant."

The question of whether compensation under the above Act should be paid in a lump sum has been said to be a matter for the sound discretion of the trial court, and the decision in the trial court should not be disturbed unless a manifest abuse of discretion is shown. Texas Em-

ployers' Ins. Co. v. Downing, Tex.Civ.App., 218 S.W. 112 (wr. ref.); Federal Underwriters Exchange v. Brigham, Tex.Civ. App., El Paso, 184 S.W.2d 849 (w. r. w. m.); Texas Employers' Ins. Ass'n v. Long, Tex.Civ.App., 180 S.W.2d 629 (ref. w. m.); Texas Indemnity Ins. Co. v. Arant, Tex. Civ.App., 171 S.W.2d 915 (error refused); Traders & General Ins. Co. v. Johnson, Tex.Civ.App., El Paso, 209 S.W.2d 996 (w. r. n. r. e.).

Claimant testified as follows:

"Q. * * * so, I want to ask you if it were awarded to you in a lump sum what your needs and plans would be in connection with a lump sum award? A. I would like to start a business when I get out of the service.

"Q. When do you expect to be out? A. It will be a year from the 26th of November.

"Q. If award were made to you of $25.00 a week and if ⅓ of that were deducted for attorneys' fees, could you take that amount, each week, and *make an investment or put it into a business* so you could maintain yourself or give yourself any security? A. No, I couldn't.

"Q. Do you have any income other than whatever you are able to earn? A. No, sir.

"Q. Or whatever you are able to get out and make? A. That is all."

It would seem therefore that the jury could logically conclude that it was for the best interest of the injured boy that payment be made in a lump sum. The above cited cases point out that in leaving what constitutes a special case for determination by the jury or court as the case may be, there are many factors that may be considered, one of which is that claimant will thereby be enabled to invest in a business of his own—that claimant will be enabled to provide some security for himself. It should be noted that the jury found this boy totally and permanently incapacitated—the insurance is for the benefit of the injured party. Consolidated Underwriters v. Saxon, Tex.Com.App., 265 S.W. 143; Gulf Casualty Co. v. Garner, Tex.Civ.App., 48

S.W.2d 746 (e. r.); Indemnity Ins. Co. of North America v. Wright, Tex.Civ.App., 69 S.W.2d 438; Traders & General Ins. Co. v. Johnson, Tex.Civ.App., 209 S.W.2d 996 (w.r. n. r. e.).

It therefore seems clear that it was proper for the trial court to submit special issue No. 14, and that there was adequate evidence for the jury's finding on such issue. The first case cited by appellant, Traders & General Ins. Co. v. Blancett, Tex.Civ. App., 96 S.W.2d 420, affirms a decision of the trial court wherein a lump sum was awarded and one of the grounds urged from the testimony was that plaintiff wished to buy a business and the court undoubtedly considered this in affirming the lump sum award. The second case cited by appellant, Maryland Casualty Co. v. Graham, Tex.Civ.App., 38 S.W.2d 909, 910 appears to set aside a lump sum award for insufficient evidence, the court pointing out in its opinion that plaintiff merely testified that he was suffering embarrassment for "lack of 'any money now'". He apparently did not testify to any plan for investment or security. There being no apparent abuse of discretion by the trial court this point is overruled.

■ Appellant's second point is as follows:

"The court erred in submitting the definition of the term 'permanent' over the objection of appellant, without further stating to the jury that the term, as used in such charge, meant a state of incapacity that will remain without improvement, or without change throughout the lifetime of plaintiff."

We include here part of the court's charge, and the first eight special issues, as follows:

"You are instructed in connection with the term 'total incapacity to labor', wherever it may appear in this charge, such term shall have the following meaning:

" 'It shall not mean an absolute incapacity to perform any kind of labor, but a person incapacitated to such extent or degree that he cannot perform the usual tasks of a workman in such a

manner as to be able to procure and retain employment, is to be regarded as totally incapacitated.'

"You are instructed that the term 'partial incapacity' means any degree of incapacity less than total; that is, less than one hundred per cent.

"In connection with the issues on total and partial incapacity, you are instructed that 'total incapacity' and 'partial incapacity' cannot exist at the same time.

"You are instructed that the term 'permanent' as used in this charge, means a state of incapacity, if any, that will remain throughout the lifetime of plaintiff.

"You are instructed that the term 'temporary' as used in this charge, means a state of incapacity, if any, that will not remain throughout the lifetime of the plaintiff.

"Now, bearing in mind the instructions and definitions herein given you, you will answer the following Special Issues.

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that on or about July 24, 1950, plaintiff Julius Rollins sustained any injury to his body while working for R. H. O. Drilling Company, Ltd.? Answer Yes or No.

"Answer: 'Yes.'

"If you have answered Special Issue No. 1 'yes' then answer this issue; otherwise do not answer this issue:

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that the injury, if any, that Julius Rollins received on or about July 24, 1950, was an injury received in the course of his employment with R. H. O. Drilling Company Ltd.? Answer yes or no.

"Answer: 'Yes.'

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the injury, if any, that Julius Rollins sustained on or about July 24, 1950, resulted in total incapacity to labor? Answer yes or no.

"Answer: 'Yes.'

"If you have answered Special Issue No. 3 'yes' then answer this issue; otherwise do not answer this issue:

"Special Issue No. 4.

"On what date, if any, do you find from a preponderance of the evidence such total incapacity, if any, began? Answer by giving date, if any.

"Answer: 'July 24, 1950.'

"If you have answered Special Issue No. 3 'yes' then answer this issue; otherwise do not answer this issue:

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that said total incapacity to labor, if any, is permanent? Answer yes or no.

"Answer: 'Yes.'

"If you have answered Special Issue No. 3 'yes' then answer this issue; otherwise, do not answer this issue:

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that said total incapacity to labor if any, is temporary?

"Answer: 'No.'

"If you have answered Special Issue No. 6 'yes' then answer this issue; otherwise do not answer this issue:

"Special Issue No. 7.

"What do you find from a preponderance of the evidence to be the duration, if any, of said total incapacity to labor, if any?

"Answer: ————

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that Julius Rollins has suffered or will suffer partial incapacity to labor as a result of said injury, if any, on or about July 24, 1950? Answer yes or no.

"Answer: 'No.'"

It will be noted that the jury found plaintiff *totally* (emphasis ours) disabled and

that such disability was permanent, also that the jury answered issue No. 6 "No", saying in effect that his total incapacity was not temporary. There does not seem to be any confusion there. They (the jury) were not dealing with a possible diminution of a partial injury or the effects therefrom, nor with temporary total incapacity, but do answer unequivocally that the man was totally disabled and that such condition was permanent in nature. Their answers effectively rule out any other construction or conclusion, and certainly do not suggest any mistake or confusion on the part of the jury. It does not seem, therefore, that there could have been any possible injury by the omission of the words "without improvement" from the definition as submitted in the charge of the court. It seems clear that had the jury believed that the disability or incapacity of plaintiff might lessen to less than total they could have easily said that the condition was temporary. It will also be noted that total and partial incapacity have been carefully defined in the trial court's charge. All things considered, it seems clear that the definition complained of is both adequate and clear under the circumstances. Traders & General Ins. Co. v. Lockwood, Tex.Civ.App., E.P., 138 S.W.2d 589, no writ history; Federal Underwriters Exchange v. Popnoe, Tex.Civ.App., E.P., 140 S.W.2d 484 (dis. agrmt.); Texas Employers' Ins. Ass'n v. Hitt, Tex.Civ.App. Galveston, 125 S.W.2d 323, no writ history; Southern Underwriters v. Schoolcraft, Tex.Civ.App., E.P., 139 S.W.2d 330; Consolidated Underwriters v. Foxworth, Tex. Civ.App.Beaumont, 196 S.W.2d 87 (no error history).

This point is accordingly overruled.

Appellant's third point is as follows:

"Where the verdict of the jury is repugnant to the admitted evidence, a judgment based thereon should not be allowed to stand."

Appellee points out that appellant's third point is not based upon proper assignment of error in appellant's motion for a new trial, is too general, and does not point out wherein the verdict of the jury is repugnant to the admitted evidence.

■ While we might be justified in declining to pass on this point, we shall nevertheless consider the point as presented by appellant. Careful examination of the Statement of Facts reveals that there was ample evidence which, if believed by the jury, would support its findings. Mr. Curtis testified to deterioration in the health of plaintiff. Dr. Ben Schoolfield testified at length, using X-ray pictures to illustrate his testimony, and stated on both direct and cross-examination that plaintiff was totally and permanently incapacitated. Mr. Frank Heasley testified to evidence of the deterioration of plaintiff's health and activity, and of course plaintiff himself, testified fully on the subject. Defendant called only one witness, Dr. Paul Kunstadt, who was reluctant to state positively, but did testify that plaintiff's condition in his opinion had improved, according to the X-rays. He said he could not find any objective symptoms, but admitted that he did not know whether claimant had pain in his lower back or not, merely saying that he found no reason for such pain. He was asked the following question:

"Summing up again, I will ask you whether or not in your opinion, from your examination and the X-ray examination of this boy, he is able to perform the usual tasks of a workman? A. According to the X-rays he should be.

"Q. And according to your physical examination of him? A. Yes, sir."

Objection was interposed and the doctor was then asked the following question:

"Q. Dr. Kunstadt, taking into consideration both your physical examination and the examination of the X-ray plates of this man, that you have seen, that are here in evidence, in your opinion is he able to perform the usual tasks of a workman in such manner that he can obtain and retain employment? A. I am afraid I cannot answer that question. May I go into detail, your Honor?—I always feel, in these cases—even though specialists might make a mistake, we are all human beings—but I don't like to be re-

sponsible either way, I hate to say he is able or is not, and that is the reason I make it a point in all of these cases—maybe it is selfish to push the responsibility off of me, off my shoulders and let somebody else decide— because I don't like to answer—

"Q. I am not asking whether it is **a** fact or it is not a fact. I am asking what your opinion is, from your examination? A. He should be able to."

Later on Dr. Kunstadt testified that he did not attempt to make a regular orthopedic examination. In cross-examination Dr. Kunstadt testified as follows:

"Q. Just by way of summation, you have not attempted to tell the jury in your opinion that this man is not disabled? A. I can not, I hesitate to say that, all I say is that I don't see anything wrong in the bones to explain it."

A fair summation of defendant's witness would simply be that he preferred to have a specialist pass on such matters, and that he did not find anything of an objective nature or in the X-rays to cause disability, and lastly that he was a most reluctant witness. The jury was the sole judge of the credibility of the witnesses, and the weight to be given their testimony. It is elementary that the reviewing court must consider the evidence most favorable to the prevailing party, and whether or not there is any evidence which supports the jury findings. Also, that the jury findings must be upheld unless clearly contrary to the overwhelming weight of the evidence. Van v. Webb, Tex.Civ.App., 237 S.W.2d 827 (ref. n. r. e.); Texas Employers' Ins. Co. v. Locke, Tex.Civ.App., 224 S.W.2d 755 (ref. n. r. e.); Traders & General Ins. Co. v. Anderson, Tex.Civ. App., 246 S.W.2d 290 (wr. ref.); Texas Employers' Ins. Ass'n v. Hevolow, Tex. Civ.App., 136 S.W.2d 931 (dis. judg. correct); Traders & General Ins. Co. v. Daniel, Tex.Civ.App., 131 S.W.2d 276 (dis. judg. corr.); Associated Indemnity Corp. v. Potts, 5 Cir., 164 F.2d 1002; Traders & General Ins. Co. v. Rischer,

Tex.Civ.App., 210 S.W.2d 652 (w. r. n. r. e.). This point is therefore overruled.

Finding no error, the decision of the trial court is affirmed.