### TEXAS EMPLOYERS' INS. ASS'N v. SCOTT.
### No. 4126.

Court of Civil Appeals of Texas. Texarkana.
Jan. 21, 1932.

Rehearing Denied Jan. 28, 1932.

Wm. M. Cramer and Shelby S. Cox, both of Dallas, and King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Wm. V. Brown, of Texarkana, for appellee.

WILLSON, C. J.

April 25, 1930, appellee, J. C. Scott, in the course of his employment by P. O. B. Montgomery, a "subscriber" within the meaning of the Workmen's Compensation Law (articles 8306 to 8309, inclusive, R. S. 1925, as amended to 1930), fell from the fifth to the fourth floor of the McCartney Hotel, then being constructed in Texarkana, and thereby suffered injury to his person. On a hearing of his claim for compensation for the injury, the Industrial Accident Board awarded appellee a recovery of $130.90 against appellant. Appellee was not satisfied with the amount of the award, and in the manner and within the time required by said law prosecuted an appeal therefrom. On findings made by the jury on special issues submitted to them at the trial in the district court, judgment was rendered April 3, 1931, in appellee's favor against appellant for $379.46 as compensation then due him and for $9.90 per week for 351½ weeks as compensation to be paid in the future. The appeal is from that judgment.

The contention first presented in appellant's brief is that the trial court erred when he refused its request that he instruct the jury to return a verdict in its favor.

It appeared from its order made November 7, 1930, that the Industrial Accident Board determined that the compensation appellee was entitled to have appellant pay to him was $9.35 a week for 14 weeks, amounting to $130.90, less 15 per cent. (or $19.63) thereof, which, the board determined, should be paid to his attorney, William V. Brown. It appeared, further, that appellant by its check dated November 11, 1930, paid appellee $111.27, being the $130.90 less $19.63 thereof, and that it tendered the $19.63 to Brown, who refused to accept it. And it appeared, further, that indorsed on the check referred to was a statement signed by appellee that by indorsing and collecting the check he released and forever discharged appellant "from (quoting) any further claim of whatsoever character" against it "resulting or to result" from the injury he had received; and appeared, further, that appellee at the same time by another writing signed by him acknowledged that he had received of appellant the sum of $130.90 in full settlement of the compensation he was entitled to on account of said injury. At

the trial, appellant's contention was that, as shown by the indorsement and receipt referred to, the $111.27 it paid appellee was accepted by him as a payment of the award by the board and as a settlement in full of his claim against it for compensation. Appellee's contention was to the contrary, insisting that the agent of appellant who tendered him the check and induced him to sign the receipt represented to him that the check was for compensation due him at the date of the tender, that further compensation would become due and would be paid to him by appellant, and that it was because he knew no better and relied upon the truth of the representations that he accepted the check and signed the receipt and statement on the check referred to. According to testimony of the agent of appellant and testimony of appellant's witness Hardy, no representations inconsistent with the recital in the statement indorsed on the check and the recital in the receipt were made to appellee to induce him to sign said statement and receipt, and it was after said documents were read over and fully explained to him that he signed same. But appellee, as a witness in his own behalf, testified that he could not read, that appellant's agent told him he had a check for him for $111.27 "back pay," and testified further as follows: "He (the agent) said that would not interfere with me; that I would get my money the same as if I was working until I got well; that he didn't know when I would get well; that it may be a year or two years and maybe never get over it. He took me to the bank then and had me sign some papers. He did not read those papers to me. I asked him what they were, and he told me that was a duplicate of what I would draw up until that time. He said I would get my $16.50 until I got well, and he said that was my back pay. I did not know at the time I signed that thing that I was signing a release or settlement in full. If I had known that I would not have signed those papers. He did not read those papers over to me. I asked him to read them, and he said it was not nothing against me. He said that would not come in contact with my getting my other money. He said I would get my $16.50 until I got well, no matter how long it would be, because I was injured. That was the reason I signed that paper. I asked him to let my wife look at it because I could not read good, and he said it was all right, that she didn't have nothing to do with it— 'just go ahead and sign it.' That is what he told me. He signed the check too that he gave me. I think he signed it if I make no mistake. He signed the check and gave me $111.27, and told me I would get my money then by the week after that." As we construe the testimony just set out, it warranted the finding of the jury in response to a special issue submitted to them that appellee "was (quoting) induced to make the settle-

ment with the Company by or as the result of fraudulent statements made to him" by appellant's agent. Therefore, we think, the trial court did not err when he refused the requested instruction. The case presented, as we view it, was the ordinary one of a conflict in testimony which properly could be determined by the jury alone.

■■ The contention next presented in said brief is that the trial court erred when he refused appellant's request to so instruct the jury, because, it is asserted, "the appellee failed to prove any measure of damages upon which a judgment could be based."

We think the contention should be overruled. By the terms of section 1 of article 8309, R. S. 1925, the compensation an employee who sustained personal injury in the course of his employment was entitled to depended upon the amount of his "average weekly wages," defined, so far as it is important to state, as follows:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

The evidence relevant to this phase of the case, relied upon by appellee, was his testimony as a witness that he (quoting) "went to work for him (P. O. B. Montgomery) about three or four months before I got hurt, or maybe longer. * * * I was getting thirty cents an hour on that job, and working ten hours a day, about ten hours. I was really making about $16.50 a week. We were supposed to work five and a half days a week, but when we would get a rush on with work, six days, and maybe until seven or eight

o'clock on a rush, seven or eight o'clock at night. To my knowing, that would make about fourteen hours. Some days I would work fourteen hours. I hardly ever worked eight hours. I know what they were paying in Texarkana for that kind of labor for a year before I got hurt. It was $3.00 per day. Men that were doing that kind of work were working generally six days a week."

Appellant's view of the matter seems to be that it devolved upon appellee to prove, and that he did not, that the subsection numbered 1 above was not applicable to his case before he was entitled to rely upon either the subdivision numbered 2 or the one numbered 3 as being applicable to it. As supporting its view appellant cites American Employers' Ins. Co. v. Singleton (Tex. Com. App.) 24 S.W.(2d) 26. In that case it appeared the claimant's wages could not be computed under subsection 1, but it was not alleged and proven, as it was in this case, what was the average daily wage paid during the year immediately preceding the injury to appellee to an employee in his class working in or in the neighborhood of the place where he worked. We think the jury had a right to infer from the proof specified that, if appellee in fact worked for longer than a year before the alleged injury, it was for the same wages he testified other laborers in his class worked for during that time, and that it ought to be said it appeared no injury to appellant resulted from the ruling of the trial court complained of. American Employers' Ins. Co. v. Hookfin (Tex. Civ. App.) 33 S.W.(2d) 801; Zurich General Accident & Liability Ins. Co. v. Wood (Tex. Civ. App.) 27 S.W.(2d) 838.

■ It is contended, next, that the "uncontradicted evidence" was that "all the disability of appellee to labor had terminated at the date of the trial," and therefore that the findings of the jury that his inability to labor as a result of the injuries he suffered was total and permanent were unwarranted. In urging the contention, we think appellant must either have ignored or misconstrued the testimony of appellee as a witness in his own behalf, as it seems to us it did in urging the contentions hereinbefore stated. The jury had a right to believe appellee's testimony, and, believing it had a right, we think to find as they did.

A result of the conclusions reached is that the assignments of error numbered 1 to 10, inclusive, in appellant's brief, are overruled, as are the assignments numbered 11 to 14, inclusive, predicated on the view that it appeared from "uncontroverted evidence" that appellee "worked (quoting) at the same employment, for different employers, for more than one year before the alleged injury and therefore his measure of damages, if any, was under the first subsection of the subdivision of article 2309 (8309) R. S. 1925, and not under the second subdivision thereof." In its

brief appellant does not point out, and we have not been able to find, such evidence in the statement of facts sent to this court.

Other contentions presented by other assignments of error in appellant's brief are believed to be also without merit, and are overruled.

The judgment is affirmed.