**TRADERS & GENERAL INS. CO. v.
DIEBEL et al.**

No. 13609.

Court of Civil Appeals of Texas. Dallas.
May 4, 1945.

Rehearing Denied June 1, 1945.

Strasburger, Price, Holland, Kelton &
Miller, of Dallas, for appellant.

412

White & Yarborough, of Dallas, for appellees.

YOUNG, Justice.

This is a suit under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., by Effie Diebel, employe, against subscriber's insurer, alleging total and permanent disability following accidental injuries; and upon jury trial and findings, judgment was rendered on basis of maximum incapacity, less credits for weekly installments voluntarily paid by defendant.

The appeal is predicated upon five points, here summarized: (1) The trial court's error in refusing to set aside aforesaid jury verdict in favor of plaintiff because such findings are so contrary to the overwhelming preponderance of the evidence as to be clearly wrong; (2) error in placing upon defendant the burden of proving by a preponderance of the evidence that plaintiff had not, or would not, sustain partial incapacity, insurer having pled that said incapacity to Effie Diebel was not total, as she alleged, but merely partial; (3) error in sustaining objection made by plaintiff's attorney, when upon cross-examination she was asked about a statement made in San Antonio to the effect that after the lawsuit was over she was going to work for Goldstein or the Gold Clair people because she was mad at Mr. Sargent (former employer), such testimony being in support of the defense that Effie Diebel was not totally and permanently disabled as claimed; (4) error in permitting plaintiff to testify on direct examination that on or about December 1, 1942, said employer Sargent told her that she had a little shyster lawyer, over objection that such testimony was improper, immaterial, and prejudicial; (5) error in refusing to permit defense counsel in jury argument to read from plaintiff's trial pleadings so as to point out discrepancies between her allegations and proof, the court having sustained objection on ground that said pleading was not in evidence.

Plaintiff's injuries were occasioned on August 29, 1942, during course of employment with Sargent Hat Company, by the fall of a ceiling fan of some 75 to 100 pounds weight, receiving the blow on forehead, left side of face and neck. The occurrence was at midday; and after one o'clock Mrs. Diebel desisted from an attempt to work and was sent to a local clinic for examination and treatment; on the trial testifying to chronic pain at site of injury, neck stiffness, causing fixed tilting of head forward and to the left; of voice weakness and inability to carry on sustained conversation; the jury trial being moved to another courtroom equipped with a public address system by reason of plaintiff's apparent difficulty in speaking. She testified to pain in any head movement or when holding a normal posture; that she had been extremely nervous since the accident; with no control over temper; that daily rest periods were necessary in connection with limited household duties; of difficulty in resting or sleeping at night; whereas before August 1942, she had been strong and healthy, with no physical handicaps such as now complained of. Mrs. Diebel, aged forty-six, had been a machine operator for the hat company several years; and testified that by reason of experience she sometimes directed other employes about their work. Her statement of physical disability was substantiated in material part by lay witnesses, inclusive of a daughter, aged twelve, and son, eighteen. Dr. Shortal, for plaintiff, testified to seeing her frequently for a time beginning November 1942. His physical findings were practically negative as to heart and lungs, blood pressure a little low; affirmative symptoms noted being interference with phonation (speech), voice, and tenderness over trachea; finding no disease or tumor as cause thereof; plaintiff complaining of pain on motion of head, also over trachea and larynx, along with aforesaid defect of voice. This witness stated that, from plaintiff's symptoms and history, with nothing else to account for her condition, it "probably resulted from the injury." He further testified:

"Q. Dr. Shortal, in your opinion, is Mrs. Diebel able to procure and retain employment and perform the usual tasks of a workman? * * * A. It depends altogether on what her vocation may be.

"Q. Well, if she has a history of having done machine work for a millinery company in the making and trimming of hats and the giving of orders in a large room where machines are running, where her oral orders necessarily have to be heard above the noise of the machines, what would be your reply? * * * A. Naturally where she has to use her voice a lot

it would be interfered with, her usefulness would be cut down to a great extent, practically nil."

Dr. John L. Jenkins, eye, ear, nose and throat specialist, first examined plaintiff in June 1943, at which time he said her head was bent to the left side, neck stiff and voice apparently weak. He found no evidence of goiter or abnormal growth that would account for said physical condition, or inability to speak above a loud whisper; and in his opinion (following hypothetical question) her present trouble was caused by the previous injury.

Dr. Gibbons, defense witness, on cross-examination related a finding of actual stiffness in plaintiff's neck and spasticity of muscles. Mrs. Diebel was treated several weeks at his clinic, and though it was the opinion of this doctor that she was thereafter able to work, he frankly admitted that in such cases the medical expert had to rely largely on symptoms of the patient and their truthfulness.

■ A resume of all opposing lay testimony was to the effect that plaintiff had the same voice peculiarity before injury, and defendant's medical witnesses reiterated that upon examination and treatment there was no substantial basis for plaintiff's claim of physical disability; her complaints having no tangible relationship to the earlier accident. However, plaintiff unquestionably sustained accidental injuries, their extent and duration being within the jury's province to determine; and viewing the evidence, as we must, from standpoint of the prevailing party, we cannot say that said jury findings of maximum disability are so contrary to the preponderance thereof as to be clearly wrong. Many cases depending almost entirely upon positive affirmation and pathology of the claimant have been upheld; see Texas Employers' Ins. Ass'n v. Scott, Tex.Civ.App., 46 S.W. 2d 348, writ refused, where full recovery was allowed on statement of injured party; Texas Employers' Ins. Ass'n v. Roberts, Tex.Civ.App., 116 S.W.2d 417, head injury, where husband and wife testified to resulting total incapacity; and Maryland Cas. Co. v. Crosby, Tex.Civ.App., 117 S.W.2d 524, where the accident involved merely the flash of an electric torch into claimant's eye.

■ Issue 7, unconditionally submitted and answered "No," reads: "Do you find from a preponderance of the evidence that plaintiff Effie Diebel has sustained or will sustain partial incapacity, if any, as a natural result of the personal injury, if any, received by her on or about the 29th day of August, 1942?" Plaintiff had alleged total and permanent disability (no alternative pleas), to which defendant interposed general denial, and by trial amendment pled that the incapacity, if any, was only partial and temporary. Objection was duly made to above manner of submission, in that the affirmative of the issue was thereby erroneously placed upon defendant; and such point is now presented as ground for reversal. A similar contention was made in Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, 790, and overruled by Judge Folley, while on the Amarillo Court, in the following language: "We think it is settled that, providing the evidence is sufficient, allegations of total and permanent disability will authorize a recovery for a lesser incapacity, both as to the extent of the disability and its duration. Southern Underwriters v. Boswell [138 Tex. 255], 158 S.W.2d 280; Southern Underwriters v. Wolcott, Tex.Civ.App., 110 S.W.2d 251; Traders & General Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682. The appellee was therefore entitled to recover for any temporary total incapacity supported by the evidence. The issue of temporary total incapacity was thus a part of his cause of action and in order to recover thereon the burden was upon him to establish it. Since the case of Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, we think it has been settled that, under circumstances like these, the affirmative submission of such an issue in behalf of the claimant, placing the burden of proof upon him, is adequate and sufficient for both parties, that the burden of proof is not thus misplaced, and that it is not prejudicial to the insurance company for the court to refuse to submit again the same issue in negative form with the burden again upon the claimant."

■ On cross-examination plaintiff was asked by defense counsel. "Q. Now, you also made a statement in San Antonio that when the lawsuit was over you wouldn't work for Mr. Sargent because you were mad at him but that you were going to work for Goldstein or the Gold Clair people, didn't you?" Objection was urged and sustained on the ground that the query was too general, not detailing where, when or to whom such statement

414

was purportedly made. It will be noted that the ruling did not foreclose the particular inquiry, and the court was well within its discretion in requiring counsel to be more specific. The question was not thereafter pressed; aside from which there is absent a showing of what the particular answer would have been. See Texas State Bank & Trust Co. v. St. John, Tex.Civ. App., 103 S.W.2d 1104, 1106, holding: "Another reason why the refusal to permit her to testify she was engaged to deceased, presents no error, is that the record does not show she would have so testified. Joy v. Craig, Tex.Civ.App., 94 S. W.2d 524; Olivas v. El Paso E. Co., Tex. Civ.App., 54 S.W.2d 154; Knight v. Texas & N. O. R. Co., Tex.Civ.App., 26 S.W.2d 672."

No error is shown in the testimony of plaintiff over objection that Bill Sargent had told her she had a little shyster lawyer, etc. Mr. Sargent, though plaintiff's witness principally on issue of wage scale, had theretofore manifested by his demeanor and answers an adverse interest in her lawsuit; under which state of the record the testimony properly bore upon bias or prejudice, if any, of this witness. And even if the statement be viewed as collateral to any issue and thereby immaterial, it would be highly speculative to assume that the personal opinion of a former employer toward her counsel probably influenced the jury to the extent of an improper verdict. Rule 434, Tex.Civ.Proc.; United Employers Cas. Co. v. Marr, Tex. Civ.App., 144 S.W.2d 973.

Neither was error involved in the court's refusal to permit defense attorney to read from plaintiff's pleading during course of jury argument because (a) Mr. Strasburger was allowed to argue to the jury and did comment upon claimed discrepancies between her allegations and proof, and (b) the pleadings thus sought to be made use of were not in evidence, counsel not indicating whether he desired to read all or only part thereof. Under well settled Texas practice the pleadings are for the court, and as such (when not in evidence) are not proper matters for jury consideration. 41 T.J., Sec. 53, p. 769; Rotan v. Maedgen, 24 Tex.Civ.App. 558, 59 S.W. 585. Jurors are sworn to render a verdict according to submitted evidence, Rule 236; to which jury argument is strictly confined, Rule 269; pleadings being excluded from their deliberations, Rule 281.

After careful study, appellant's points of error must be overruled and judgment of the trial court affirmed.