## TRADERS & GENERAL INS. CO. v. RISCHER.

### No. 13863.

Court of Civil Appeals of Texas. Dallas.
March 5, 1948.

Rehearing Denied March 26, 1948.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

White & Yarborough and W. E. Johnson, all of Dallas, for appellee.

YOUNG, Justice.

The cause of action was under the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., with claimant's recovery in terms of total permanent disability, growing out of injuries allegedly sustained on April 8, 1946 while working on a Dallas building job for Russell C. Irons; insurance carrier duly perfecting its appeal.

The court's charge contained the usual definitions of "personal injury," "total incapacity," "partial incapacity" and the like; all issues involved in the suit being properly raised under defendant's general de-

nial and plea that the injury sustained by plaintiff, if any, was only minor and temporary. Appellant's appeal presents, in effect, the following points: (1) That the jury finding of total permanent disability was so contrary to the great preponderance of evidence as to be clearly wrong; (2) error in the court's refusal of defendant's requested instructions 1 and 2; and (3) improper and prejudicial argument on part of plaintiff's counsel as shown by bill of exception No. 3.

Anthony Rischer, aged 48, while working as a bricklayer's helper, fell from an insecure scaffold some ten feet to a concrete floor, landing on his back. The accident occurred close to quitting time, claimant at first thinking he was not hurt. On getting home, however, he began to feel pain, and next morning could hardly move; pains in lower part of back, and in bed most of the time for several days. He was then sent to a Dr. Clark for treatment over some ten or twelve weeks. The back troubles continued, however, claimant testifying at the trial "My back goes to throbbing, and it goes on up into my head now, and is affecting my eyes." His further testimony was that he never had any such trouble before the accident; not having been employed since his injury because he had been unable to work. Dr. Butte testified that X-ray pictures showed a pre-existing arthritic condition in lower back; also a posterior or backward displacement of the fifth lumbar vertebra in relation to the sacrum of at least one-eighth inch; some limitation of movement in lower back in all directions; that Rischer would experience a great deal of pain in lower back on resumption of heavy labor, necessitating frequent layoffs, and "would say" that he was not "suitable for doing heavy labor." In opinion of this witness, the condition was permanent, there being a causal connection between injury and appellee's disability; also that he doubted the latter's ability to hold a job "involving heavy work" and perform the usual tasks of a workman.

The testimony of Dr. Schalk on behalf of plaintiff was even more positive; his treatment and examination of appellee indicating a great deal of muscular spasm over the entire lumbar area, extending up the lower ribs and down into pelvic bone; that the spasm was at its worst over fourth and fifth lumbar vertebrae; that on his suggestion, Rischer had picked a "light job" once or twice, patient always returning in a worse condition. In opinion of witness, appellee, at time of trial, was unable to perform the usual tasks of a workman, with the qualification that he might do "very light work,"—meaning anything that could be done without standing on feet or putting lower part of back to any exertion. Dr. Schalk further said there was a thinning of disc between last lumbar vertebra and sacrum; in other words, a displacement. Defensive medical testimony was in effect that plaintiff had fully recovered from any bodily injury and was able to return to work.

■ Appellant argues that any verdict of complete disability is wholly unwarranted, pointing to the fact that both doctors for plaintiff admitted that he could do light work; Dr. Butte, on cross-examination, stating (somewhat inconsistently, we think) that "In so far as doing any work is concerned, he would be somewhere around thirty to forty percent disabled. For doing light work, messenger boy's work, something of that sort, nightwatchman's work, his disability wouldn't be over ten percent probably." Even so, under the testimony of the named medical witnesses as a whole (and including plaintiff's own narrative), the extent and duration of his disability was undoubtedly a matter for the jury's determination; and it cannot be said that their findings of total permanent disability are so preponderantly against the great weight of the evidence as to be clearly wrong. Texas Employers' Ins. Ass'n v. Scott, Tex.Civ.App., 46 S.W.2d 348; Maryland Casualty Co. v. Crosby, Tex.Civ.App., 117 S.W.2d 524; Traders & General Ins. Co. v. Diebel, Tex.Civ.App., 188 S.W.2d 411.

■ In the Court's charge, "total incapacity" was defined, viz.: "'Total Incapacity' as that term is used in this charge, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks

of a workman in such a way as to enable him to procure and retain employment, is ordinarily regarded as totally incapacitated." Appellant assigns as error the court's refusal to supplement the definition just quoted by its requested instruction, reading: "In connection with the charge on 'total incapacity', you are further instructed that an employee is not totally incapacitated because he cannot perform the same kind of work he performed before the accident, if any. So long as there is any work for which he is fitted or which he is able to perform, he is not totally incapacitated." The court's refusal of the tendered instruction was not error. The proper and oft approved definition of "total incapacity" had already been included in the charge, rendering unnecessary any other definition of that phrase. Texas Employers' Ins. Ass'n v. Mallard, Sup.Ct. 143 Tex. 77, 182 S.W.2d 1000, 1001. Furthermore, the refused instruction appears in conflict with the court's definition, or at least unduly restrictive thereof; providing as it does that a workman is not totally incapacitated "so long as there is any work for which he is fitted," whereas the given instruction plainly declares that "Total incapacity * *. * does not imply any absolute disability to perform any kind of labor * * *." See Southern Underwriters v. Weldon, Tex.Civ.App., 142 S.W. 2d 574.

■ Defendant requested the following special instruction, refused by the court, viz.: "You are further instructed that if the disability, if any, of the plaintiff was caused by a combination of the injury, if any, received by the plaintiff on April 8th, 1946, if you find that he did receive an injury on that date, and of arthritis, and if you find that he has recovered, or will recover, from his injury, if any, but suffered thereafter solely with arthritis, if any, or is suffering solely from arthritis, if any, or will in the future suffer solely from arthritis, if any, then you will answer the questions on disability, if any, so as to fix the date of the termination of the disability, if any, resulting from the injury, if any, on the date at which the injury, if any, ceased to be the cause of the disability,

if any." In this connection, there was no defensive pleading that appellee's disability resulted solely from arthritis; the court submitting the issues of temporary disability, also defining "personal injury" in terms of the statute; Art. 8309, sec. 1, subd. 5. There was no error in the court's refusal of the quoted instruction, for reasons concisely stated in appellee's counterpoints and argument which we adopt in substance (1) because the instruction, if given, would have prevented any recovery for an aggravated or increased arthritic condition of claimant; (2) the theory that claimant's disability was due solely to arthritis was defensive matter, not pled by appellant, therefore waived and no instruction thereon was proper; Rules 94, 279, Texas Rules of Civil Procedure; (3) when considered in connection with other submitted issues on temporary disability and the instructions and definitions given in the court's charge, the statutory definition of what constituted a compensable personal injury was sufficient; thus rendering unnecessary a further definition of that term.

■ Finally, appellant charges reversible error "because of the improper argument of attorney Johnson for the plaintiff, wherein he told the jury that the defendant had brought a witness, Lit Hanes, to the courthouse but had not placed him on the witness stand because they learned that the said Hanes would not lie for the defendant." This witness was in attendance on the trial at behest of defendant. Defense attorney, Mr. Kelton, had talked with him about his testimony, but rested without placing Hanes on the stand; whereupon plaintiff used him in rebuttal, the witness testifying fully to the effect that he had not seen the accident. In this state of the record and referring to the proximity of Hanes to the platform or scaffold, Mr. Johnson in course of argument had demanded: "Why didn't they put him on the stand? They had him here. He wouldn't lie about it." Objection was made to such argument as unfair, Mr. Kelton stating that the witness had not been used because "he said he didn't see the accident happen * * *." The objection was sustained and jury instructed to disregard the quoted

argument. In view of the outlined factual background, we do not consider the remarks of counsel at all susceptible of the inference that defendant's failure to use the particular witness was because he would not lie for the insurance company; but if it can be said that the rules of argument were transgressed, then the court's timely instruction removed the possibility of any harmful effect. The judgment under review is in all respects affirmed.