**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Agnes CHAMPAIGNE et vir, Appellees.**

**No. 6013.**

Court of Civil Appeals of Texas.

Beaumont.

Feb. 16, 1956.

Rehearing Denied March 28, 1956.

Marcus & Weller, Beaumont, for appellant.

Adams, Browne & Sample, Beaumont, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Jefferson County in a suit for benefits under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306, § 1 et seq. Agnes Champaigne was the injured workman, Texas Employers' Insurance Association was the insurance carrier, and Cummer-Graham Company was the employer. Agnes Champaigne was injured on May 12, 1954, while working at her machine in the employer's box factory. A small loaded truck was driven into her, and she was pinned down by a part of the truck's load of wooden sticks which fell upon her. It struck her in the lower part of the back. She sued, alleging total and permanent disability because of her injury. The jury returned a verdict in her favor, finding total and permanent disability.

The appellant in its brief complains of the finding that appellee Agnes Champaigne's disability is permanent. It raises a complaint as to the evidence in support of such finding in three ways, (1) that there was no evidence to support such finding; (2) that the evidence is insufficient to support such finding; and (3) that the jury's finding in that regard is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. These attacks upon the evidence are contained in appellant's points one, two and three, and are presented together.

The evidence is without dispute as to the manner in which Agnes was injured. She testified that her job at the box factory was to sit at a machine and place small sticks into a moving belt which fed them into a machine; that while she was thus working a truck loaded with wooden slats hit her from behind, in the lower part of the back and pinned her against a box; a boy from

another machine pulled the truck off her back; she sat there 4 or 5 minutes before she moved. Two other women, fellow workers, testified as to how the accident happened, which was substantially the same account as that given by Agnes herself. After she reported her injury to the office she was taken to Dr. Allamon for treatment. Dr. Allamon had x-rays made of her, bandaged her back with tape and gave her some liniment, pills and tablets. After that she went home and the next day returned to Dr. Allamon's office. He gave her a heat treatment and sent her to the hospital where she remained from May 13th to May 31st. At the hospital they gave her electric treatments and sleeping tablets. Agnes further testified that after she was discharged from the hospital she still had not had any relief, that she was not able to be up and about and do her work; sometimes she did some work at the house, trying to cook and wash dishes and sometimes she fixed one bed; that she did those things because her back hurt her anyway and she had "rather try to do something than sit down and tell someone I can't do anything." Before the accident she did not hurt and weighed about 156 pounds, she was in good health as far as she knew, that she did a full day's work at the box factory, looked after her family and did the work at her house, she was 26 years old and had never been hurt before. During this time at home while she was having trouble with her back, her husband put liniment, bengue, hot water bottles and hot towels on her back; her back hurts her constantly—sometimes worse than others. The pain is in her back and sometimes in her hip and in her leg down to the foot and has been that way ever since the accident.

Dr. Swickard examined her at the request of her attorneys, the first examination being on March 18, 1955. He testified at the trial and went into detail as to what his findings were and what her complaints were. He found that she had some muscle spasm in the lumbar muscles in the lower part of the back and had a marked curve forward, what they call a lordosis, and sway back forward. He further testified that it is very difficult to tell how long she will be disabled; that it would depend entirely on how she would react to treatment, what results she would get from any treatment she would receive, that he would be unable to determine how long her disability would last; that the best way he could describe it was to say it would certainly be indefinite.

Dr. Allamon and Dr. Stephenson testified as medical experts and their testimony was introduced by the appellant. The pertinent portion of their testimony was that so far as her injury was concerned it would not cause her more than a few weeks of disability. The appellant says in its brief, in a summary of its argument under this point, that the finding of the jury that total incapacity would continue permanently must stand or fall on the testimony of Dr. Swickard and then argues that since Dr. Swickard's testimony went no further than to say that it would be very speculative to say how long the disability would last and the most he could say was that it was indefinite, and that such testimony either amounts to no evidence to support the jury's finding or was insufficient to support it. We are not in agreement with this argument. Agnes' testimony itself presented some evidence which the jury could rightfully consider in determining the period of time her disability would continue. Dr. Swickard's testimony that the period of time to which disability would extend was indefinite must not be considered as being evidence that the disability was to be of short duration. One of the definitions of the word "indefinite" as given in one of the many Webster's dictionaries, "not definite; having no exact limits." The jury could have viewed this testimony of Dr. Swickard as meaning substantially to them that he could determine no exact limit to the time of disability. This view of the law is found in Traders & General Insurance Co. v. Davis, Tex. Civ.App., 209 S.W.2d 963. The briefers on both sides of this controversy have provided us with excellent briefs and they have not differed materially as to the law involved. There is no dispute between

them that the reviewing court must view the evidence most favorably in support of the jury's finding; that no specific method or any fixed rule of evidence exists by which a claimant is required to establish the fact that he has suffered total permanent disability; that such a finding must be supported by competent evidence.

■ The injured woman's back injury and its effects were described in detail by her and by her doctor. A severe sprain of the muscles of the back is always capable of causing injuries far reaching in their consequences and medical experts usually, as in this case, are hardly ever able to be willing to commit themselves definitely as to the extent and duration of incapacity. The duration and extent of disability is at best an estimate which must be determined by a jury, from all the pertinent facts before it. Employers' Reinsurance Company v. Jones, Tex.Civ.App., 195 S.W. 2d 810. While it must be admitted that the jury in this case by its verdict appears to have given the injured woman's evidence full credence, we do not think that the evidence is such that we would be warranted in holding that it presents no evidence of permanent disability or that all the evidence is insufficient to support the finding, or that the finding is so against the weight and preponderance of the evidence as to be clearly wrong and unjust. The courts in various cases have upheld findings of permanent disability based upon evidence no more precise and definite than the evidence in this case. See Texas Employers' Ins. Ass'n v. Scott, Tex.Civ.App., 46 S.W.2d 348; Traders & General Ins. Co. v. Diebel, Tex.Civ.App., 188 S.W.2d 411; Texas Employers' Ins. Ass'n v. Scott, Tex.Civ.App., 233 S.W.2d 171, 174. In the latter case the plaintiff's expert medical witness testified that "he did not know when the appellee would be a normal man again."

■ The two medical witnesses, Dr. Allamon and Dr. Stephenson, testified in behalf of the appellant and said that Agnes was exaggerating her complaint and was not hurt as badly as she pretended to be.

However, it has long been recognized as a rule in our jurisprudence that such expert testimony is opinion evidence only and is not conclusive. The jury may and should consider the opinion of an expert as they consider all of the other evidence before them and if in their judgment, in view of all the other evidence it is not entitled to credence, then they may disregard it. Kennedy v. Upshaw, 66 Tex. 442, 1 S.W. 308; National Life & Accident Ins. Co. v. Muckelroy, Tex.Civ.App., 40 S.W.2d 1115; Coxson v. Atlanta Life Insurance Co., 142 Tex. 544, 179 S.W.2d 943.

We overrule appellant's points one, two and three.

Under its points Nos. 4, 5, and 6 the appellant raises a new question for consideration. It complains in several ways of the court's definition in its charge of the phrase "total incapacity". The gist of the complaints is that the definition given by the court permits a finding of total incapacity if Agnes Champaigne was found to be "disqualified from performing the usual tasks of a workman", and since Agnes was a woman, the definition does not properly apply to her condition and disability. Point 4 reads as follows: "It was error for the court to give the jury the definition of 'total incapacity' which was given them, over the objection of appellant that such definition sets up an improper standard and places an undue burden on the defendant by advising the jury that Agnes Champaigne would be considered as totally disabled if they find she is unable to perform the usual tasks of a workman, and therefore, in view of her sex, allowed the jury to apply an erroneous standard calculated to cause an excessive verdict." The court gave the following definition of "total incapacity". "The term 'total incapacity' as used in the Workmen's Compensation Law, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable her to both obtain and retain employment is ordinarily regarded as totally incapacitated."

Point 5 reads as follows: "it was error for the court to submit Special Issue No. 7 as it was submitted, over the objection of the appellant that it allowed the jury to find the total incapacity of Agnes Champaigne to exist if they found that she is not able to perform the usual tasks of a workman, and subjected the appellant to excessive liability by making the determination of 'total incapacity' depend on whether she could perform a man's work and did not take into consideration her sex and inability to perform tasks that could only be performed by a man." ·

The appellant made the following objections to the court's definition of the term "total incapacity":

"Defendant objects to the court's definition of the term 'Total Incapacity', as used in the charge, because same instructs the jury that a person disqualified from performing the usual tasks of a workman in such a way as to enable her to both obtain and retain employment is ordinarily regarded as totally incapacitated, because such places an undue burden on the defendant and sets up an improper standard by advising the jury that if Agnes Champaigne is disqualified from performing the usual tasks of a workman she is totally disabled, and, therefore, will allow the jury to find total incapacity merely because of her inability to perform the tasks which ordinarily would be performed by a man and is calculated to cause an excessive and improper verdict to be returned.

"In this connection defendant shows the court that the definition of 'Total Incapacity' is improper and more onerous on the defendant than the law requires, and the defendant hereby requests the court to instruct the jury that Agnes Champaigne would be considered totally disabled only in the event that they find she is unable to procure and obtain employment of such nature and character as she was capable of performing prior to her injury of May 12, 1954."

It also had the following objections to Special Issue No. 7:

"(e) Under the definition of 'Total Incapacity' given elsewhere in the charge an undue burden is placed upon the defendant, in that under such instruction the jury is allowed to find total incapacity if they find Agnes Champaigne is unable to do the usual tasks of a workman, thereby fixing as a standard or guide for determination of the question her ability to do a man's work, or the usual tasks of a man, and thereby rendering this defendant liable for total incapacity because of her inability to perform the usual tasks of a workman, and, further, making this defendant liable for total incapacity regardless of whether she was ever able to perform the usual tasks of a workman or whether during the period of her employment she was able to perform such.

"(f) The Court's definition of 'total incapacity' given elsewhere in the charge in connection with said Special Issue No. 7, as worded, would allow the jury to find Agnes Champaigne totally disabled if they found that she is not able to perform the usual tasks of a workman, and, therefore, subjects the defendant to excessive liability by making the determination of total incapacity depend on whether she can perform a man's work, and thus does not take into consideration the matter of sex and inability to perform tasks that could only be performed by a man."

The appellant also requested the court to give the jury the following definition of total incapacity: "Defendant requests the court to give the jury the following definition of 'Total Incapacity,' in lieu of that given, to-wit: The term 'Total Incapacity' as applied in this case, does not imply an absolute disability on the part of Agnes Champaigne to perform any kind of labor, but if you find that she is disqualified from performing the nature and character of work that she was capable of performing

prior to May 12, 1954, in such way as to enable her to obtain and retain employment at such character of work she would be regarded as totally disabled."

Under these points the appellant earnestly maintains that an undue burden was placed upon it by the court's definition and special issues, in that the appellant should not be subject to liability for total incapacity if Agnes Champaigne is not able to perform the usual tasks of a workman; that she was a female and had been doing no work except light work, and that while she might be recovered from her injury sufficiently to do the light work that she and other females had been doing before the injury, and still was not able to do the usual tasks of a workman, she could nevertheless be found to be totally disabled.

■ The definition given in the charge by the court is one which has long been accepted as proper. The Supreme Court has held that it is the standard definition of that term in this jurisdiction. Texas Employers' Insurance Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, 1001, and cases cited. The appellant has brought forward no authority for its proposition that a different definition must be employed when an injured workman is a female. The charge as given, it must be noted, recognizes that Agnes was a female. It contains a qualification of the term "workman" by informing the jury that a person disqualified from performing the usual tasks of a workman in such a way as to enable *her* to both obtain and retain employment is ordinarily regarded as totally incapacitated. This appears to relieve the appellant of any undue burden of proof complained of. It did not allow a finding of total incapacity if the jury believed from the evidence that Agnes would be disqualified by her incapacity from obtaining and retaining a job that is ordinarily held by a man.

■ The special issue requested by the appellant and refused by the court would have restricted the jury to a finding of total incapacity only if they found that Agnes was disqualified from performing the kind of work she was capable of doing before her injury, or if she was disqualified from obtaining and retaining employment as such character of work as she was doing before her injury. Such a definition, we think, has already been held to be improper in Texas Employers' Insurance Ass'n v. Mallard, supra. In that case the trial court gave a definition of total incapacity which would have allowed a finding of total disability if the person was disqualified from performing the usual tasks of a workman in such a way as to prevent him from " 'procuring and retaining employment in the usual occupation which he is suited to perform.' " This was held to be an undue restriction of the definition of total incapacity. We believe these points present no error and they are overruled.

Under its point No. 8 the appellant complains of the court's Special Issue No. 7. This issue read as follows: "From a preponderance of the evidence, for how long a period of time, if any, do you find that the total incapacity, if any, of Agnes Champaigne to work and earn money has continued or will continue from the dates you have given in answer to the preceding Special Issue No. 6 (if you have answered Special Issue No. 6)? Answer by stating the length of time, if any.

The jury answered this issue "permanent". The objection of the appellant to this issue was as follows:

"(a) Same is submitted in such manner as to permit plaintiffs to escape from the burden rightfully imposed upon them in that plaintiffs have alleged and seek to recover for a condition of total and permanent incapacity and are thereby under the burden of establishing that such total incapacity is permanent, yet said issues as submitted do not require them to discharge such burden by a preponderance of the evidence and the defendant now requests the court to so frame and submit said issue as to require the jury to find something from a preponderance of the evidence whether or not plaintiff's total incapacity is permanent.

"(b) Same places improper and undue burden upon the defendant.

"(c) Such does not properly place the burden of proof in that the court has previously in the charge given the jury a definition of the word 'permanent' yet nowhere in said issue are the jury advised that in order to make a finding of 'permanent' to said issue No. 7 they must do so only by finding such from a preponderance of the evidence."

The appellant says in its brief that this same point was presented to the court in the case of Texas Employers' Insurance Ass'n v. Goines, Tex.Civ.App., 202 S.W.2d 487, and that the point was overruled in that case. It says that this point was overruled in the Goines case on the authority of Texas Employers' Insurance Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, but requests that this court reconsider the question. It also mentions the holding in Texas Employers' Insurance Ass'n v. Pillow, Tex.Civ.App., 268 S.W.2d 716. In these cases it is held that an issue inquiring whether total incapacity has been or will be permanent or has been or will be temporary did not fail to place the burden of proof on the plaintiffs to show that total disability was permanent. Appellant points out that the issue in the present case inquired for how long a period of time, if any, the total incapacity, if any, has continued or will continue, and that the issue did not contain the word "permanent". We are unable to see any distinction in the wording of the issue under consideration from those concerned in the cited cases which would work any harm upon the appellant. The words, "from a preponderance of the evidence" certainly placed the burden of proof upon the plaintiff. The inquiry as to how long a period of time the total incapacity would continue or will continue appears to be not only a direct inquiry as to whether the incapacity is permanent or temporary, but it also allows a finding of the period of time the disability will continue in case the jury believes it to be temporary. By Rule 277, Texas Rules of Civil Procedure, the court is expressly authorized in a compensation case to submit in one issue whether the injured employee is permanently or only temporarily disabled. The issue as worded conforms to this rule. We find no error in this point and it is overruled.

Appellant's Point No. 9 complains of the wording of Special Issue No. 8, its complaint being substantially the same contention as was advanced under its Points Nos. 4, 5, and 6, that is, that since Agnes Champaigne is a female, her incapacity should not be judged by her inability to perform the usual tasks of a workman, but according to her inability to do the type and character of work she was doing prior to her injury. We have considered this contention above in our discussion of Points 4, 5, and 6 and believe it to be without merit for the reasons given. This point is overruled.

Point No. 10 complains of the court's action in refusing to submit appellant's requested Special Issue No. 3. Such requested issue sought to inquire whether "any present incapacity of Agnes Champaigne is not due solely to causes and conditions wholly unconnected with the injury received by her on or about May 12, 1954." The appellant had pleaded by special answer that any incapacity of Agnes Champaigne after July 16, 1954, has been, is and will be solely caused by conditions and causes wholly unconnected with her employment by Cummer-Graham Company, or with any accidental injury sustained in the course of such employment. The trial court did submit as Special Issue No. 16 in its charge the following special issue: "Do you find from a preponderance of the evidence that any present incapacity of Agnes Champaigne is caused solely by a retroverted uterus?" The jury answered this issue "no". The only evidence in the record tending to show any condition or causes which may have caused or tended to cause Agnes Champaigne's disability was the medical testimony that she had a retroverted uterus. Since that is the only matter in evidence touching on such point, we think it was not error for the court to submit this specific cause in Special Issue No. 16 and

refuse to submit the general proposition of some cause other than the accidental injury, as requested by the appellant. The court is required to submit affirmatively all affirmative defenses pleaded by the defendant when there is evidence raising such issue. The evidence here raised only the matter submitted by the court in the charge, and it was not error to refuse to submit the requested issue. This point is overruled on the authority of Texas Employers' Insurance Ass'n v. Patterson, 144 Tex. 573, 192 S.W.2d 255.

 By Point No. 7 the appellant complains of the trial court's action in refusing to give its requested Special Instruction "B". This special requested instruction reads as follows: "You are hereby instructed that in passing upon the question of incapacity sustained by Agnes Champaigne since May 12, 1954, you will not take into consideration any pain suffered by her except to the extent that you may find from a preponderance of the evidence has actually prevented her from performing her usual duties or has prevented her from being able to perform such duties as she was capable of performing prior thereto." Appellant contends under this point that the trial court should have given this instruction to the jury, because it is a well known rule of the law of workmen's compensation that pain and suffering are not compensable. We do not think it was error to refuse to give this instruction in the court's charge. The court's charge, with the definitions therein contained, make it clear that the court instructed the jury to make answers to the specific issues submitted. The issues dealing with total incapacity define in approved language the term "incapacitated" and there is no intimation anywhere in the charge that the claimant could be compensated by judgment of the court or verdict of the jury for pain and suffering, but it was clear that one of the objects of the lawsuit was the determination by the jury of the extent and duration of the claimant's incapacity to work and earn money. The instruction requested by the appellant would have improperly limited the jury in its consideration of all the evidence in determining the

extent and duration of her incapacity. The degree and nature of the pain she suffered, the places in her body where the pain was noticeable, and pain caused by movements of her body, were all to be properly considered by the jury in determining what kind of incapacity she received, how severe it was and how long it would probably endure. This point presents no error and it is overruled.

No error appearing, the judgment is affirmed.