**GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORP., Ltd., Appellant,**

v.

**J. E. MURPHY, Appellee.**

No. 13607.

Court of Civil Appeals of Texas.

Houston.

Oct. 6, 1960.

Rehearing Denied Oct. 27, 1960.

Chilton Bryan, E. H. Patton, Jr., Houston, Bryan & Patton, Houston, of counsel, for appellant.

Helm, Jones, McDermott & Pletcher, Houston, Albert P. Jones, George E. Pletcher, Mabel G. Howell, Houston, for appellee.

BELL, Chief Justice.

This is a workmen's compensation case in which a jury found appellee to be totally and permanently disabled.

Appellee alleged that on February 20, 1958 he received injuries to the second, third and fourth (little) fingers of his right hand, his right hand and his right arm. He then alleged that the injuries to these members "have extended to and naturally affected his entire hand, as well as his right arm, neck, shoulders and nervous and circulatory systems" by reason of which he was suffering total permanent disability. He further alleged that if he had a pre-existing infirmity, it was unknown to him, and was in no wise disabling, and the injuries so aggravated the condition that he was totally disabled.

It will thus be seen that appellee did not seek compensation for any specific injury, but pitched recovery wholly upon his being totally and permanently disabled by reason of an extension of the effects of his injuries into his body generally.

Appellant, while denying any liability by reason of its contention that the injuries were not received in the scope and course of his employment, pled that appellee's disability was due to pre-existing conditions, or, his disability was restricted to the right hand below the elbow, or was restricted to the second, third and fourth fingers of his right hand.

The jury, in response to special issues submitted, found as follows:

1. The injuries were received in the course of appellee's employment.

2. The injuries to the fingers had "naturally extended to and affected his body generally."

3. The injuries to the fingers were the producing cause of incapacity.

4. Appellee had sustained total incapacity.

5. The injuries to the fingers were a producing cause of such total incapacity.

6. The total incapacity began February 20, 1958.

7. The total incapacity was permanent.

8. The incapacity was not confined solely to the fingers of the right hand.

9. The incapacity was not confined solely to the right arm.

10. The incapacity was not caused solely by the loss of the use of the fingers to the right hand.

11. The incapacity was not "caused solely as the result of disease and bodily condition existing before February 20, 1958."

12. That it would work a manifest hardship if compensation were not paid in lump sum.

The court entered judgment on the verdict for total permanent disability. Too, the sum of $1,000 for reasonable medical expense was awarded.

Appellant seeks reversal of the judgment on these grounds:

1. There is no evidence to support a judgment for total permanent disability.

2. The jury finding of total permanent disability is contrary to the overwhelming weight and preponderance of the evidence.

3. While the jury found the injury to appellee's fingers extended to the body as a whole, there was no evidence and no finding that any incapacity resulted from the effects of the extension of the injury as distinguished from the specific injury itself.

4. The court erred in the manner of submission because under the charge the jury had to either find no disability at all or disability to the body as a whole, and could not find disability to specific members of the body as shown by the evidence.

5. The court erred in refusing appellant's specially requested instruction telling the jury it could not consider as a factor of disability pain which might have resulted from use by appellee of his injured fingers.

6. The court erred in refusing to hear evidence of jury misconduct.

We have reached the conclusion, considering the evidence most favorably to the prevailing party, that there is evidence to support a finding of total permanent disability. We are also of the view, after considering and weighing all of the testimony in the record, both that which supports the jury findings and that which militates against them, that we cannot say the jury findings of total and permanent disability are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The evidence shows that appellee was employed by the Lingo Company. It was a relatively small company where he as an employee performed practically any work he was called on to do. The company sold mechanical parts to service men. His primary job seemed to be handling accounts receivable, but he also worked at the counter, engaged in sales work and at times did maintenance work. He was injured when he was putting a fan belt on the fan of a company delivery truck. The fan cut his middle and ring fingers so as to leave them "dangling." The distal tip of the little finger was amputated. He was given emergency treatment at St. Joseph's Hospital by Dr. Forner. Dr. Forner stated the cuts to the middle and ring fingers were deep but did not involve the nerves and tendons which control the flexion of the fingers. There was a contusion of the medial half of the entire right hand. Murphy was of course complaining of a great deal of pain.

Under local anesthetic the doctor removed the bone of the little finger, which was exposed, at the distal joint and the skin was flapped over so as to close over the stump. He sutured the lacerations to the other fingers. Appellee returned for treatments up until the beginning of April, 1958. He came for treatment from twelve to fifteen times. He required considerable amounts of narcotics and sedatives to control the pain. He had an abnormal amount of pain for the first few days, but in time increased dosages of medicine were not needed. Appellee last visited him April 22, 1958. At this time appellee complained of considerable pain, numbness, swelling and limitation of motion in the fingers. These conditions were noted when dressings were changed throughout March and the beginning of April. When examined on April 22 there was no swelling but some limitation in motion which Dr. Forner estimated would disappear in thirty days. He noted that appellee complained of occasional shooting pains throughout his whole hand which progressed through the wrist, forearm and into the elbow. The doctor found no clinical cause for this. He saw no indication for a sympathectomy. There was injury to the nerve of the little finger. He saw no reason for any relation between the injury to the nerve and the pain up into the arm. He restricted estimate of disability to the little finger where it was amputated. Throughout the doctor's treatment of appellee, appellee was cooperative.

Appellee testified he was under treatment of Dr. Forner for about two months. After his emergency treatment the day he was injured he was at home five days. After five days he went to work but could only use his left hand. He could work only an hour or an hour and a half. He could only work on accounts receivable. Since he first returned to work he has been off more than he has worked. His same salary has continued. His twin brother was manager of the company and later became owner. He has lost chances at promotion and pay increases. After each op-

eration he would be at home and he had to take medicine and while under its influence he couldn't work. After treatment by Dr. Forner he was sent by appellant to Dr. Anderson in July, 1958. Dr. Anderson suggested further surgery. Dr. Anderson amputated part of his little finger. In February, 1959, Drs. Ehni and Leavens performed an operation to sever some nerve. The operation was performed on the back of his neck. He was in the hospital ten days. He had the operation in hope that it would relieve the pain in his hand and arm. He never got over suffering pain after his injury. Prior to the last operation he could use only two fingers on his right hand and he had constant pain that extended into his shoulder. He was suffering extreme pain. The operation gave him relief to some extent. Further surgery has been prescribed. He has submitted to every treatment recommended by any doctor. At the time of trial his hand and arm from the tip of his finger into the middle of his back where the operation was performed are in constant pain. He can sleep only three or four hours a night unless he takes medication, and if he takes medication he cannot work the next day. After the last operation he had extensive physio-therapy and at such time his neck was put in traction. He could previously type 50 to 60 words per minute. Now he can use only one finger on his right hand. He cannot write (he was right handed). He cannot now work at the counter because he cannot write invoices. He can barely sign his name. Before the last operation his trouble went up into his shoulder. Following the operation there was stiffness, aching and soreness in the neck. He testified that "for a period right after the operation it seemed like it was going to completely—do the job fairly well, but then that must have been just my neck—it was so sore I imagine that was just leveling off between the different—there's been so much of it I can't even separate them any more." Before his injury he never missed work and at the time of trial he testified

he was in worse shape than he had been since the accident.

The appellee was also under treatment from Dr. Markewich, who finally told him to see a specialist.

Dr. Leavens, the specialist to whom appellee went, was a neuro-surgeon. He first saw appellee in February, 1959, but his partner, Dr. Ehni, had seen him in October, 1958. Appellee complained of pain that extended up to the elbow. The scar at the end of the little finger was very sensitive and the muscles of the forearm were tender. The pain was in the realm of causalgia pain due to injury of the peripheral nerves. There was burning pain in the distribution of the injured nerves. He testified that the pain is greatly affected by emotional and environmental changes; fear, anxiety and tension can greatly aggravate pain in a person with causalgia. Appellee was severely disabled and needed help. He seemed to be in genuine pain. Dr. Leavens purposed to perform a ganglionectomy. He removed the second thoracic sympathetic ganglion to prevent the overflow of the sympathetic nerve impulses into the upper extremities. Following the operation the sensitivity in the end of the little finger returned after a time. In April of 1959 appellee complained of stiffness, tightness and aching in the back of the neck and shoulder on the right side. He still had some of it at the time of trial. The trouble was caused by the necessary scars in this type of operation. Appellee appeared depressed which was the natural result of the pain and loss of sleep. The witness said appellee's difficulties affected the whole body because anyone in constant pain, even if the pain is from the little finger, will be worn down and will become depressed and there would be a personality change. He stated appellee was just not living. Appellee had had sufficient time to get over his difficulties and had not. The witness just hoped appellee would get no worse. He would not, as a doctor, pass appellee for a job requiring manual labor. Appellee's condition, in his opinion, made him unable to perform the duties of a working man. The witness said appellee was very cooperative and he believed him to be genuine in his complaints and not a malingerer.

Dr. Anderson, appellant's witness, felt all disability was confined to the little finger. He felt appellee was not really in pain but was exaggerating. He found no need for the ganglionectomy. He found no objective evidences of continued pain.

Appellee admitted he had been shell shocked in World War II and drew a disability pension. He denied that the war injury had ever in any way interfered with his working.

The above evidence is reasonably susceptible to the construction that appellee's body generally was affected by an extension into it of the effects of the injury to the fingers, particularly the injury to the little finger. The evidence shows the peripheral nerve was affected. Appellee, after the performance of the ganglionectomy, had, and continues to have, soreness and aching in the neck. He has continuous pain that is not confined to the little finger. The operation performed by an admittedly competent and reputable neuro-surgeon was designed to remedy the trouble, but it did not. Dr. Leavens said the appellee was not, in his opinion, a malingerer. In his opinion, the pain suffered was real. There was contrary testimony, but the jury resolved the conflict. Corroborative of Dr. Leavens' opinion is the testimony of appellee himself. Too, the very fact of appellee's willingness to undergo somewhat radical surgery is evidence of the genuineness of appellee's complaints. The pain is not such as is produced only by use of the specifically injured member, but it is a constant extreme pain even when the member is not used, which is productive of extensive loss of sleep with resulting adverse effect on the health of the appellee so as to interfere with his work. Appellee was depressed. Under the testimony he has lost more time since the accident than he has worked. Dr Leavens said appellee just wasn't living

He hoped he didn't get worse. He had had sufficient time to get over the trouble and had not. Considering the pain appellee is suffering and has suffered, the stiffness and aching in the neck and shoulder, the tenderness of the stump, the loss of sleep and nervousness and fear of further injury, Dr. Leavens would not pass appellee for a job which might require manual labor.

■ Of course, if the injury and its effects are limited to a specific member, compensation is limited to that prescribed for loss of or injury to the specific member. If, however, the injury to the specific member extends to the body generally, or perhaps it is more accurate to state, if the effects of the injury extend to other parts of the body and cause disability, compensation is recoverable for the disability thus caused to the other part of the body affected. Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575; Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463.

■ In the instant case, the evidence sustains the finding by the jury that the effects of the injury to the fingers extended to the body generally so as to make appellee totally and permanently disabled within the meaning of the Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. There was abnormal pain caused by the injury and it extended into the arm and up into the shoulders. It was not pain produced merely by use of the injured member, but was a constant pain that caused loss of sleep which naturally affects ability to work. This was caused by injury to the sympathetic nervous system and specifically to the peripheral nerves that are a part of the sympathetic nervous system. Dr. Leavens, in treatment for the condition, performed the ganglionectomy. The second thoracic ganglion was removed for the purpose of slowing the flow to the peripheral nerves. The operation did not prove successful and in addition to the constant pain from the finger into the arm and shoulder, stiffness, aching and soreness resulted in the neck. The combined effect was to produce loss of sleep, concern by appellee about his condition and manifestations of depression, so that, as Dr. Leavens said, appellee just wasn't living. He had had to miss more time from work than he had been able to work. The conclusion could, with reason, be reached that appellee's general health was affected. See Texas Employers' Ins. Ass'n v. Polk, Tex.Civ.App., 269 S.W.2d 582, n. r. e.

■ Even if it should be said the suffering of appellee was nothing more than a neurosis, still there is compensable disability. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315.

■ The fact that appellee was paid his full salary does not militate against a finding of total permanent disability. The test is the ability to obtain and retain employment in competition with other workmen in the labor market. Earnings a person may make in continuation of his employment with the same employer are merely evidentiary on the issue of total permanent disability. Superior Ins. Co. v. Burnes, Tex.Civ.App., 278 S.W.2d 934, n. r. e.

We have read each case cited by appellant and find each to be factually distinguishable from the case before us.

Appellant by Point 4 contends there is no evidence to support a finding that the extension of the effects of the injury was disabling so as to result in total permanent disability. By Point 5 appellant asserts that the conclusion that the extended injury caused total permanent disability is contrary to the great weight and preponderance of the evidence. By Point 6 appellant asserts there was not sufficient evidence to support a finding of total permanent disability to the body as a whole; there was no evidence and no finding that total permanent disability resulted from the extension of the effects of the injury as distinguished from the injury itself.

What we have previously said suffices to dispose of such Points adversely to appellant.

By Point 7 appellant complains the trial court erred in the manner in which it submitted the case to the jury, because under the charge the jury had to either find appellee had no disability at all or had disability to the body as a whole and it could not, under the charge, find disability to specific members of the body as shown by the evidence. We overrule such Point.

■ The appellee chose, as he had a right to do, to seek recovery for total permanent disability by reason of extension of the effects of the injury to the fingers into his body generally. Had he not been successful before the jury in this regard, he would have had no recovery. By his not seeking from the jury a finding with respect to disability because of injuries to specific members, he waived such ground of recovery. Baggett v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 70 S.W.2d 469, error ref. He had a right to assume this burden.

■ Further in this connection, it is to be noted that appellant made no objection to the court's charge for failure to submit such an issue. He thus waived any error if any there was.

Actually, the defensive theory was, apart from no liability, that any disability was confined to the fingers, or hand. These defensive theories were fully presented by the court's charge. By special issues 15 through 18 the court submitted these theories, inquiring in separate issues whether any incapacity was confined solely to the fingers or the hand, or whether disability was caused solely by loss of use of the fingers, or whether the disability was due solely to pre-existing disease or bodily condition. The jury answered each unfavorably to appellant. However, in these defensive issues as submitted there was full opportunity for the jury to find a limitation of disability to specific members and thus defeat recovery by appellee.

The jury may have been confused in its interpretation of the court's charge, particularly issue No. 17 inquiring if incapacity was not caused solely by loss of use of the fingers, because of the negative form of submission. Such confusion has never, so far as we know, been held to be error. The jury's question on how to answer this issue, coupled with the jury's statement that the members believed the loss of use of the fingers was the only cause for incapacity, is nothing more than evidence of the members' thinking at one stage of deliberation. It is the final determination of the jury in answering the issues that is important and controlling.

It is to be noted that issue No. 17, over which there may have been some confusion, was not objected to by appellant either as to form or substance.

■ Appellant next says the court erred in not giving its specially requested instruction, instructing the jury not to consider as a factor of disability pain which resulted from use of the injured fingers. He relies upon the case of Coleman v. Hartford Accident & Indemnity Co., Tex.Civ.App., 297 S.W.2d 236, n. r. e.

That case was one in which the only pain complained of was such as resulted from use of the member. The court specifically pointed out that only use caused the pain and it was not a case such as Texas Employers' Ins. Ass'n v. Polk, Tex.Civ.App., 269 S.W.2d 582, n. r. e., where pain existed independent of use of the member but because of injury to the members. In the Coleman case the court held that when pain resulted merely from use of the member causing discomfort in other parts of the body, there was no impairment of the general ability to work apart from the use of the member.

We have no such case here. We have a case where there is constant pain extending into other parts of the body without regard to use of the injured member.

We think the holding of the court in Texas Employers' Ins. Ass'n v. Cham-

paigne, Tex.Civ.App., 288 S.W.2d 306, no writ hist., sustains the action of the trial court in refusing the instruction.

■ Appellant urges the charge as submitted does not establish a compensable injury because it did not submit and there was no finding that the extended injury resulted in any disability to the body as a whole. We overrule this Point.

Special Issue No. 2 reads:

"Do you find from a preponderance of the evidence that the injuries to the fingers of the right hand of J. E. Murphy have naturally extended to and affected his body generally?"

■ It is true of course, as held in the cases of Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, and Denbow v. Standard Accident Ins. Co., 143 Tex. 455, 186 S.W.2d 236, both by the Supreme Court, that to recover for a general injury the effects of the injury to a specific member must extend into and affect the body generally so as to cause disability.

■ It is to be observed here that appellant made no objection to the issue as submitted, and made no objection to the court's charge for failure to include an inquiry as to whether the extension of the effects of the specific injury into the body generally caused incapacity. The most that appellant can say is that there is but an omission to submit one element of the cause of action. There being no proper objection to the charge for failure to submit the element, it will be presumed on appeal that the trial court found the fact so as to support the judgment, there being evidence to support such finding. Rule 279, Texas Rules of Civil Procedure; Texas Employers' Ins. Ass'n v. Reed, Tex.Civ.App., 150 S.W.2d 858, error dism.

We are, however, of the view, when the charge of the court and the verdict of the jury are considered as a whole, there is necessarily the finding that the effects of the injury to the fingers extend to the body so as to cause disability. The jury specifically found in answer to special issue No. 2 that the effects of the injuries to the fingers naturally extended to and affected appellee's body generally. In answer to special issue No. 4, the jury answered that appellee had sustained some total incapacity. In answer to issue No. 5, the jury found that the injuries to the fingers *and their effects* were a producing cause of such total incapacity. In answer to issue No. 6, the jury found the beginning date of such total incapacity to be the date of the injury. In answer to issue No. 7 the jury found such total incapacity to be permanent. Then, in answer to issues 15–18, the jury found the incapacity of appellee was not confined solely to the fingers or hand, and was not caused solely by the loss of the use of the fingers and was not caused solely by pre-existing disease or bodily injury. Too, it should be noted that the court, after defining partial and total incapacity, gave this instruction:

"You are further instructed that neither 'total incapacity' nor 'partial incapacity' as such terms are used herein can exist where an injury and its effects are confined solely to the fingers, to a hand, to an arm, or where such injury produces only a loss of the use of fingers, hand or of an arm."

See Maryland Casualty Co. v. Bryant, Tex.Civ.App., 84 S.W.2d 492, writ dism.

Finally, appellant complains the trial court erred in refusing to hear testimony on the motion for new trial based on alleged jury misconduct.

The alleged misconduct is set up in paragraphs 74–78, inclusive. The effect of the assertion is that the jury was confused by the court's charge and thought under it they must find appellee totally and permanently disabled or not disabled at all. Too, it is asserted the jury considered the effect of their answers, and that the jury discussed and agreed that though the injuries were confined to the fingers or hand, they were duty bound under the charge to find total permanent disability to the body as a whole.

Attached to the motion for new trial was an unsworn transcript of questions and answers of the juror, N. D. Sanders. The attorneys for appellant in their sworn motion for new trial state Sanders would not give a sworn statement, but stated he said the answers he gave were true. The answers of the juror Hathaway were sworn to by him.

The question and answer statements are quite lengthy. We will only say of them that we have read them in their entirety. They wholly fail to show any overt act of misconduct. They merely reflect the mental processes, in part, of the juror giving the answer. No issue was raised by the statements that called for hearing testimony. The trial court did not, therefore, err in refusing to hear testimony.

The judgment of the trial court is affirmed.